1  DAVIS WRIGHT TREMAINE LLP
   ALONZO WICKERS IV (State Bar No. 169454)
2    alonzowickers@dwt.com
   865 South Figueroa Street, 24th Floor
3  Los Angeles, California  90017-2566
   Telephone:  (213) 633-6800/Fax:  (213) 633-6899
4
   DAVIS WRIGHT TREMAINE LLP
5  ELIZABETH A. McNAMARA (*Pro Hac Vice*)
     elizabethmcnamara@dwt.com
6  JOHN M. BROWNING (*Pro Hac Vice*)
     johnbrowning@dwt.com
7  1251 Avenue of the Americas, 21st Floor
   New York, New York 10020
8  Telephone:  (212) 489-8230/Fax:  (212) 489-8340

9  Attorneys for Defendants
   BAUER PUBLISHING COMPANY, L.P.,
10 BAUER MAGAZINE L.P., BAUER
   MEDIA GROUP, INC., BAUER, INC.,
11 HEINRICH BAUER NORTH AMERICA,
   INC., and BAUER MEDIA GROUP USA,
12 LLC

                    UNITED STATES DISTRICT COURT
13       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

14 BLAKE TOLLISON SHELTON, an          ) Case No. **15-cv-09057-CAS-AGR**
   individual,                         )
15                                     )
                    Plaintiff,         ) **DEFENDANTS' REPLY**
16                                     ) **MEMORANDUM OF POINTS AND**
          vs.                          ) **AUTHORITIES IN SUPPORT OF**
17 BAUER PUBLISHING COMPANY,           ) **SPECIAL MOTION TO STRIKE**
   L.P.; BAUER MAGAZINE L.P.;          )
18 BAUER MEDIA GROUP, INC.;            )
   BAUER, INC.; BAUER NORTH            ) Date:   March 28, 2016
19 AMERICA, INC.; BAUER MEDIA          ) Time:   10:00 a.m.
   GROUP USA, LLC; and DOES 1-20,      )
20 inclusive,                          ) Assigned to the Hon. Christina A. Snyder
                                       ) Courtroom:  5
21                  Defendants.        )
                                       )
22                                     )
                                       ) Action Filed:  October 19, 2015
23                                     )
                                       )
24 ─────────────────────────           )
                                         [Supplemental Declaration of Adriane
25                                       Schwartz with Exhibits Q-U, Opposition
                                         to Declaration of John A. Hawkins and
26                                       Responses to Plaintiff's Objections to
                                         Perel and Schwartz Declarations filed
27                                       herewith]

28

─────────────────────────────────────────────

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

INTRODUCTION............................................................................................... 1

I.    SHELTON'S LAWSUIT IS SUBJECT TO A MOTION TO
      STRIKE ........................................................................................... 3

II.   SHELTON CANNOT SHOW A PROBABILITY OF
      PREVAILING ................................................................................... 5

      A.    The Statements About Shelton's Drinking –
            including Rehab – Are Not Actionable...................................... 8

      B.    Shelton Is Libel Proof Concerning his Excessive
            Drinking ................................................................................... 13

      C.    Shelton Challenges Non-Actionable Statements of
            Opinion .................................................................................... 14

      D.    Shelton's Libel Claim Fails Because he Cannot
            Establish Actual Malice ........................................................... 15

            1.    The Complaint Fails to Adequately Plead Actual
                  Malice ............................................................................. 15

            2.    Shelton Cannot Show Even a Likelihood of Proving
                  Actual Malice by Clear and Convincing Evidence ....... 17

            3.    Shelton's False Light Invasion of Privacy Claim Will
                  Not Prevail ..................................................................... 25

CONCLUSION ................................................................................................ 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Agnant v Shakur*,
30 F. Supp. 2d 420 (S.D.N.Y. 1998) ................................................... 10

*Alioto v. Cowles Communs., Inc.*,
430 F. Supp. 1363 (N.D. Cal. 1977) ................................................... 21

*Associated Financial Corp. v. Financial Services Information Co.*,
No. CV-88-6636 SVW, 1989 U.S. Dist. LEXIS (C.D. Cal. Jul. 21 1989) ...................................................................................................... 20

*Barger v. Playboy Enterprises, Inc.*,
564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd without opinion*, 732 F.2d 163 (9th Cir. 1984) ............................................................... 3, 9

*Beckham v. Bauer Publishing Co., L.P.*,
No CV 10-7980-R, 2011 U.S. Dist. LEXIS 32269 (C.D. Cal. Mar. 17, 2011) ........................................................................................ *passim*

*Blackburn v. ABC Legal Servs.*,
No. C 11-01298 JSW, 2011 U.S. Dist. LEXIS 109817 (N.D. Cal. Sept. 27, 2011) ................................................................................... 7

*Burnett v. Nat'l Enquirer*,
144 Cal.App.3d 991, 193 Cal. Rptr. 206 (1983) ............................. 21

*Campanelli v. Regents of the Univ. of Cal.*,
44 Cal. App. 4th 572, 51 Cal. Rptr. 2d 891 (1996) ....................... 15

*Church of Scientology v. Dell Publishing*,
362 F. Supp. 767 (N. D. Cal. 1973) .................................................. 24

*D.A.R.E. America v. Rolling Stone Magazine*,
101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) ............................................................................. 18, 20, 22, 24

*desGranges v. Crall*,
27 Cal. App. 313, 149 P. 177 (1915) ................................................ 5

*DuCharme v. Int'l Brotherhood of Elec. Workers*,
110 Cal. App.4th 107, 1 Cal. Rptr. 501 (2003) ............................... 4

*Dula v. Calop Bus. Sys.*,
CV 10-04091 SJO (JCGx), 2011 U.S. Dist. LEXIS 155648 (C.D. Cal. Jul. 20, 2011) ......................................................................... 16

*Eastwood v. National Enquirer*,
123 F.3d 1249 (9th Cir. 1997) ........................................... 18, 20, 22

*Edwards v. Nat'l Audubon Society*,
556 F.2d 113 (2d Cir. 1977) .............................................................. 19

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Fabbrini v. City of Dunsmuir*,
544 F. Supp. 2d 1044 (E.D. Cal. 2008), *aff'd in part*, 631 F.3d 1299
(9th Cir. 2011)..............................................................................................5

*Forsher v. Bugliosi*,
26 Cal. 3d 792, 163 Cal. Rptr. 628 (1980)....................................................8, 24

*Gonzales v. Allstate Ins. Co.*,
CV 04-1548 FMC (PJWx), 2005 U.S. Dist. LEXIS 45773 (C.D.
Cal. Aug. 1, 2005) .........................................................................................7

*Guccione v. Hustler Magazine*,
800 F.2d 298 (2d Cir. 1986).......................................................................13, 14

*Harrell v. George*,
No. CIV S-11-0253, 2012 U.S. Dist. LEXIS 119181 (E.D. Cal.
Aug. 22, 2012) .................................................................................................6

*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2010) ........................................................................4

*Ingels v. Westwood One Broad, Servs.*,
129 Cal. App. 4th 1050, 28 Cal. Rptr. 3d 933 (2005) ...............................4

*Kaelin v. Globe Communications*,
162 F.3d 1036 (9th Cir. 1998) ...........................................................8, 9, 10, 23

*Kechera House Buddhist Ass'n Malay v. Does*,
15-cv-00332-DMR, 2015 U.S. Dist. LEXIS 126124 (N.D. Cal.
Sept. 18, 2015) ...............................................................................................5

*Kelly v. Schmidberger*,
806 F.2d 44 (2d Cir. 1986)...........................................................................6

*Lamon v. Dir*,
No. CIV S-06-0156 GEB KJM P, 2010 U.S. Dist. LEXIS 90596
(E.D. Cal. Sept. 1, 2010) ...............................................................................5

*Levan v. Capital Cities/ABC, Inc.*,
190 F.3d 1230 (11th Cir. 1999) ...................................................................18

*Liberty Lobby Inc. v. Rees*,
852 F.2d 595 (D.C. Cir. 1988) ................................................................17, 19

*Liguori v. Alexander*,
495 F. Supp. 641 (S.D.N.Y. 1980) ..............................................................6

*McFarlane v. Esquire Magazine*,
74 F.3d 1296 (D.C. Cir. 1996) .....................................................................17

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990) .........................................................................................14

*Newton v NBC*,
930 F.2d 662 (9th Cir. 1990) ...................................................................1, 18

iii

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Nguyen-Lam v. Cao,*
    171 Cal. App. 4th 858, 90 Cal. Rptr. 205 (2009) ...........................................10, 16

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008) .........................................3

*Oao Alfa Bank v. Ctr. For Pub. Integrity,*
    387 F. Supp. 2d 20 (D.C. Cir. 2005)............................................................21, 23

*Pacquiao v. Mayweather,*
    803 F. Supp. 2d 1208 (D. Nev. 2011) ...............................................................10

*Peck v. Tribune Co.,*
    214 U.S. 185 (1915)...........................................................................................9

*Polygram Records v. Superior Court,*
    170 Cal. App. 3d, 216 Cal. Rptr. 252 (1985)....................................................10

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) .......................................................................13, 25

*Robertson v. Rodriguez,*
    36 Cal. App. 4th 347, 42 Cal. Rptr. 2d 464 (1995)............................................19

*Rosanova v. Playboy Enters.,*
    580 F.2d 859 (5th Cir. 1978) .............................................................................19

*Sanders v. Hearst Corp.,*
    No. C 98-04554 MMC, 1999 U.S. Dist. LEXIS 23354 (N.D. Cal.
    Feb. 22, 1999) ..................................................................................................22

*Sarver v. Chartier,*
    NO. 11-56986, 12-255429, 2016 U.S. App. LEXIS 2664 (9th Cir.
    Feb. 16, 2016) ....................................................................................................3

*Secord v. Cockburn,*
    747 F. Supp. 779 (D.C. Cir. 1990)....................................................................22

*Seelig v. Infinity Broadcasting Corp.,*
    97 Cal. App 4th 798, 119 Cal. Rptr. 2d 108 (2012) ............................................4

*Simmons v. Allstate Ins. Co.,*
    92 Cal. App.4th 1068, 112 Cal. Rptr.2d 397 (2001) ...........................................7

*Smith v. Santa Rosa Press Democrat,*
    No. C 11-02411 SI, 2011 U.S. Dist. LEXIS 121449 (N.D. Cal. Oct.
    20, 2011) ................................................................................................2, 16, 24

*Solano v. Playgirl, Inc.,*
    292 F.3d 1078 (9th Cir. 2002) ...........................................................................23

*Sprouse v. Clay Commns.,*
    211 S.E.2d 674 (W.Va. 1975)............................................................................23

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Standing Comm. On Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ............................................................ 15

*Stern v. Cosby*,
    645 F. Supp. 258 (S.D.N.Y. 2009) ...................................................... 13

*Swartz v. KPMG LLC*,
    476 F.3d 756 (9th Cir. 2007) ............................................................... 6

*Vogel v Felice*,
    127 Cal. App. 4th 1006, 26 Cal. Rptr. 3d 350 (2005) ......................... 12

*Ward v. Klein*,
    809 N.Y.S.2d 828 (Sup. Ct. N.Y. Cty. 2005) ..................................... 10

*Willbanks v. Wolk*,
    121 Cal.App.4th 883, 17 Cal. Rptr. 497 (2004) ................................. 15

*World Boxing Council v. Cosell*,
    715 F. Supp. 1259 (S.D.N.Y. 1989) .................................................. 20

*Wynberg v. Nat'l Enquirer*,
    564 F. Supp. 924 (C.D. Cal. 1982) ............................................... 13, 14

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ................................................ 16

**Statutes**

California Code of Civil Procedure
    § 425.16........................................................................................... 2
    § 425.16(e)(4)................................................................................... 4

**Rules**

Local Rule
    15-1 ................................................................................................. 6
    15(a)(2)............................................................................................ 7

**Other Authorities**

Restatement (Second) Torts (1997)
    § 556.............................................................................................. 14
    § 559.............................................................................................. 10

v

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION[1]

By this action, made plain by his opposition to this motion, Blake Shelton seeks to re-write the very identity he has fostered, promoted and lived for the last decade: a hard drinking "country boy" who defiantly declares to CNN viewers "I drink alcohol and always will until I die and I don't care if you like it or not." He attempts to dismissively sweep aside years of his own "drunk" commentary to millions of his followers, reinforced by his appearances on *The Tonight Show* and the like, as nothing more than a "persona" or a "schtick." Opp. Br. 4:23-5-10. Yet, the law does not allow such an easy side step. Each of the challenged statements from the Article was entirely in keeping with Shelton's richly-cultivated reputation for irresponsible drinking. Thus, as the Ninth Circuit observed – and he not surprisingly makes no attempt to distinguish – Shelton "cannot fault [Bauer] for relying on his own statements." *Newton v NBC*, 930 F.2d 662, 684 (9th Cir. 1990).

Shelton's denial does not stop there. Bauer established on this motion that each of the challenged statements – which at their core involve the well-documented fact that Shelton drinks to excess – were either substantially true, not defamatory or opinion. Bauer also established that Shelton did not even plead, let alone have a probability of establishing, actual malice when Bauer justifiably relied on Shelton's own statements and multiple independent and consistent sources. In response, Shelton fails to provide any evidence to support a conclusion that Bauer published the Article knowing it to be false or having any doubts about its accuracy (let alone serious doubts). Nor has Shelton cited a single precedent when actual malice was found on facts comparable to those present here. His failure to even minimally meet his burden of establishing clear and convincing evidence of actual

---

[1] Unless otherwise specified, capitalized and abbreviated terms will have the same definition that they had in Bauer's moving memorandum of law ("Defs. Mem.") and supporting declaration or in Shelton's opposition brief ("Opp. Br.") and supporting declarations.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

malice is dictated by the reality that no court has found actual malice when, as here, a publisher published a story that was consistent with a subject's well-established reputation; a story that relied on multiple sources that the publisher had used in the past and found entirely credible; and where comment on the story was sought before publication.

Instead, via an attorney declaration, Shelton seeks to cure these deficiencies by asking to amend his complaint to add statements from the Article never referenced or identified and additional allegations that he believes might belatedly support a finding of actual malice. But, the law does not allow such transparent efforts to avoid dismissal. *Smith v. Santa Rosa Press Democrat*, No. C 11-02411 SI, 2011 U.S. Dist. LEXIS 121449, at *20 (N.D. Cal. Oct. 20, 2011) ("[L]eave to amend is not necessary or appropriate" because "the purpose of the anti-SLAPP statute is to provide for a speedy resolution of claims which impinge on speech protected by the First Amendment.").

Even more troubling, Shelton resorts to apparent false testimony. He declares that the Article's depiction of his Mexico trip was "fabricated," because the "partying" described at the Hotel ME Melia in Cancun could not have occurred as during his trip he "did not stay at the hotel ME Melia Cancun or visit it." Shelton Dec. ¶ 14; Opp. Br. 5:16-20. Yet, indisputable photographic evidence places Shelton at that very hotel and with the blonde guest described in the Article. Supplemental Declaration of Adriane Schwartz ("Supp. Schwartz Decl."), Ex. Q.[2] In short, re-stating his complaint or providing seemingly false testimony, cannot save this action from dismissal. Bauer's special motion to strike under California's anti SLAPP statute, California Code of Civil Procedure § 425.16 should be granted

---

[2] When this apparently false testimony became evident, Bauer promptly put Shelton's counsel on notice, asking him to withdraw the declaration. In his email response, Shelton's attorney refused to voluntarily withdraw the declaration.

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

because Shelton has not demonstrated the required "probability" of prevailing on his state law claims and his complaint must be stricken.

## I.     SHELTON'S LAWSUIT IS SUBJECT TO A MOTION TO STRIKE

Shelton attempts to argue that the SLAPP statute does not apply to the Article because it is not "about a matter of public interest." Opp. Br. 7:11. Contrary to Shelton's impermissibly narrow view, however, it is well-established that courts in California "construe public interest broadly in light of the statute's stated purpose to encourage participation in matters of public interest or importance." *Sarver v. Chartier*, NO. 11-56986, 12-255429, 2016 U.S. App. LEXIS 2664, at*19 (9th Cir. Feb. 16, 2016).[3] Courts have thus confirmed that a "public interest" issue is "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1039, 72 Cal. Rptr. 3d 210, 220 (2008). "In other words, an issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id*.

Here, Shelton is, by his own admission, a "country music superstar" (Compl. § 16), and, as such, is indisputably "in the public eye" and "a topic of widespread public interest." Put simply, the public's undisputed interest in Shelton is alone sufficient to justify application of the statute to the Article.[4] Nonetheless, Shelton

---

[3] After acknowledging that he has "cultivated an entertainment persona" of a "country boy who likes to drink," through his public appearances and public Twitter feed, Shelton bizarrely argues that his "private medical condition" is not an issue of public interest under the anti-SLAPP statute. Opp. Br. 4:23-24; 7:7-8. Yet, Shelton's very public persona as a person who loves to drink to excess is not a "private" issue. Shelton also argues that "Bauer is hardly the 'common citizen' the statute is intended to protect" (Opp. Br. 6:7-8), citing *Sarver*. Yet, he ignores that in *Sarver*, the Ninth Circuit applied SLAPP protection to such "common citizens" as an Oscar-winning director, a movie producer and "numerous corporate defendants" including *Playboy* magazine and major movie studios. *Sarver*, 2016 U.S. App. LEXIS, at *6. *See also, Beckham v. Bauer Publishing Co., L.P.*, No CV 10-7980-R, 2011 U.S. Dist. LEXIS 32269 (C.D. Cal. Mar. 17, 2011)(striking complaint under anti-SLAPP statute arising out of Bauer's *In Touch* magazine reporting on David Beckham's infidelity.).

[4] Ignoring that he has most certainly put himself center-stage in any discussion about irresponsible drinking, Shelton suggests that the statute only protects articles about "a celebrity who has become involved with a cause, endorsed a political candidate or otherwise tied himself to an ongoing controversy, dispute or

---

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

asks the Court to put on blinders and think of him as merely a private citizen in whom the public has no interest.  The very case Shelton cites, *Hilton v. Hallmark Cards*, 599 F.3d 894, 905, 907-08 (9th Cir. 2010) (cited at Opp. Br. 7-8), makes it abundantly clear that the Article's coverage of Shelton's latest drunken exploits is covered by the anti-SLAPP statute.  After observing that "the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice" under the statute, the Ninth Circuit goes on to explain that the anti-SLAPP statute *did* apply in that case, which did not even involve news reporting, but rather a greeting card.  *Id*. at 905.   The Ninth Circuit decision rested on little more than the Court's acknowledgement that Paris Hilton was extremely famous:

> There is no dispute that Hilton is a person "in the public eye" and a topic of widespread public interest" and that she was such well before this controversy.  Thus, Hallmark's card is "in connection with a public issue or an issue of public interest," Cal. Civ. Proc. Code § 425.16(e)(4).

599 F.3d at 907.

Nor can Shelton justify his assertion that the "personal details" of Shelton's life are off limits for the purposes of a SLAPP motion.  Opp. Br. 7:7-9:10.   As Bauer explains in its moving papers, courts routinely apply the anti-SLAPP statute to articles about the "private life" of a celebrity where, as here, the broader issue was a matter of public controversy.[5]  In sum, *In Touch's* reporting on Shelton's self-

---

discussion…" Opp. Br. 8:4 n. 14.  No law supports such a heightened standard. And *DuCharme v. Int'l Brotherhood of Elec. Workers,* cited by Shelton, only observes that a "public significance" standard applied "where the issue is not of interest to the public at large," something Shelton could not begin to meet given his celebrity and the import of any conversation regarding excessive drinking. 110 Cal. App.4th 107, 119, 1 Cal. Rptr. 501 (2003).

[5] *See, e.g., Beckham*, 2011 U.S. Dist. LEXIS 32269, at *2-3 (applying SLAPP statute to article about David Beckham's alleged extramarital affairs because these "would be a topic of interest to a wide variety of people"); *Seelig v. Infinity Broadcasting Corp.*, 97 Cal. App 4th 798, 807-08, 119 Cal. Rptr. 2d 108, 115 (2012) (referring to a reality television contestant as a "skank," a pejorative sexual smear, triggers anti-SLAPP protection because statement related to matter of public interest); *Ingels v. Westwood One Broad, Servs.*, 129 Cal. App. 4th 1050, 1064, 28 Cal. Rptr. 3d 933, 941 (2005) (holding that conversation on radio talk

---

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

promoted love of irresponsible drinking and the breakdown of his marriage to fellow country superstar Miranda Lambert have long been subjects "of public interest" and are clearly entitled to statutory protection for that reason.

## II.   SHELTON CANNOT SHOW A PROBABILITY OF PREVAILING

As a threshold matter, only the expressly defined statements Shelton identified in his Complaint are at issue on this motion.  Comp. ¶26.  Shelton cannot retroactively challenge any statements he failed to identify in the Complaint merely by listing them in his attorney's declaration accompanying his opposition.  *See* Opp. Br. 13:6 n.25; Stein Decl. ¶13.  Indeed, settled California law requires a libel plaintiff to specifically identify the "words constituting an alleged libel" so "that the defendant may have notice of the particular charge which he is required to answer." *Kechera House Buddhist Ass'n Malay v. Does*, 15-cv-00332-DMR, 2015 U.S. Dist. LEXIS 126124, at *15 (N.D. Cal. Sept. 18, 2015), citing *desGranges v. Crall*, 27 Cal. App. 313, 314-15, 149 P. 177 (1915).  And it is equally well-settled that a complaint cannot be amended by opposition papers, particularly via an attorney declaration.  *See, e.g.*, *Lamon v. Dir*, No. CIV S-06-0156 GEB KJM P, 2010 U.S. Dist. LEXIS 90596, at *20 (E.D. Cal. Sept. 1, 2010) ("Plaintiff cannot use his opposition to a motion for summary judgment, filed long after the answers were filed... as a vehicle to further amend his complaint to raise additional claims"); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15"), *aff'd in part*, 631 F.3d 1299 (9th Cir. 2011).  Here, Shelton failed to "specifically identify" the omitted statements he now seeks to dispute by omitting

---

show about the subject of dating was matter of public interest under anti-SLAPP statute).

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

them from his Complaint and thus failed to give Bauer the requisite notice required.[6]

Shelton's argument that "Bauer had notice of the [additional] communications complained of" because he attached the Article as an exhibit is untenable. Opp. Br. 13:6 n.25. Simply put, a libel plaintiff is not permitted to attach an article to a complaint and "merely offer[] blanket assertions that the [article] is false in its entirety." *Harrell v. George*, No. CIV S-11-0253, 2012 U.S. Dist. LEXIS 119181, at *2-3, 22 (E.D. Cal. Aug. 22, 2012) (dismissing libel claim where plaintiff "referred generally" to statements in attached exhibit). Nor do Shelton's own cases provide him any comfort. Citing *Kelly v. Schmidberger*, Shelton suggests that Bauer had notice of all "the communications complained of" since "Shelton attached the Rehab Story to the Complaint as an exhibit and incorporated it – in its entirety – by reference." *Id.*, citing 806 F.2d 44, 46 (2d Cir. 1986). But *Kelly* says no such thing. The full quotation Shelton borrows from actually explains that when courts determine whether allegedly defamatory statements are pled with sufficient specificity, "[t]he central concern [for the Court] is that the complaint 'afford defendant sufficient notice of the communications complained of to enable to defend himself.'" *Id.*, citing *Liguori v. Alexander*, 495 F. Supp. 641, 647 (S.D.N.Y. 1980).[7] Since Shelton acknowledges that the Complaint "specifically identified the cover, its interior headlines, and various other statements as false and

_____

[6] Shelton's request for leave to amend also violates Local Rule 15-1, which requires that "[a]ny proposed amended pleading must be filed as an attachment to the related motion or stipulation." L.R. 15-1.

[7] *Kelly* is factually distinguishable as well. In that case the complaint specifically referred to a particular statement that appeared in a letter attached as an exhibit, but failed to quote that statement verbatim. *Kelly*, 806 F.2d. at 46. Here, by contrast, Shelton completely omitted any reference to the statements he now seeks to challenge and thus cannot seriously argue that Bauer had sufficient notice. Nor does *Swartz v. KPMG LLC*, 476 F.3d 756, 763 (9th Cir. 2007) help plaintiff's position. *Swartz* is not a defamation case and merely stands for the proposition that a court can take judicial notice of a letter attached to the complaint for the purposes of a 12(b)(6) motion. *Id. Swartz* has nothing to do with whether Shelton gave Bauer sufficient notice of the omitted statements he now seeks to challenge.

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

defamatory," Bauer had no reason to believe that he challenged any other statements in the Article and thus had no notice that Shelton intended to challenge them. Opp. Br. 13:6 n.25.  In other words, the law prohibits Shelton from requiring Bauer to guess which statements he actually meant to dispute, as he apparently expects Bauer to do.

Shelton attempts to cure his omission by burying a request for leave to amend his Complaint in a footnote.  Opp. Br. 13:6 n.25.  A plaintiff cannot escape the consequences of a dismissal of an anti-SLAPP motion – including attorney fees – by a belated amendment of the complaint.  *Blackburn v. ABC Legal Servs.*, No. C 11-01298 JSW, 2011 U.S. Dist. LEXIS 109817, at *7 (N.D. Cal. Sept. 27, 2011) ("[I]t would be improper to grant leave to amend" claim subject to SLAPP motion to strike"); *Simmons v. Allstate Ins. Co.*, 92 Cal. App.4th 1068, 1074, 112 Cal. Rptr.2d 397 (2001) (granting leave to amend amendment would "totally frustrate the Legislature's objective of providing a quick and inexpensive method of unmasking and dismissing" meritless suits).  Amendment is particularly inappropriate here because, if Shelton actually intended to challenge statements other than those he specifically listed, he could (and indeed should) have included those statements in his initial Complaint along with the Statements he defined.  *See e.g.*, *Gonzales v. Allstate Ins. Co.*, CV 04-1548 FMC (PJWx), 2005 U.S. Dist. LEXIS 45773, at *8 (C.D. Cal. Aug. 1, 2005) ("When a plaintiff knows of theory and facts supporting the amendment from the commencement of the litigation, courts are less tolerant of the delay[.]").

In sum, while Rule 15(a)(2) permits the Court to give leave to amend "when justice so requires," it would be profoundly inequitable to allow Shelton at this stage to retroactively challenge statements he omitted from his initial Complaint.

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**A.    The Statements About Shelton's Drinking – including Rehab – Are Not Actionable**

Whether the Article's headline is understood to mean that Shelton should go to rehab, is going to rehab, or is in rehab, the determinative issue remains the same: is it defamatory to suggest that someone is in or needs rehab when the factual predicate – excessive drinking – is substantially true?  Shelton largely avoids this basic question, including all the evidence supporting his drinking fixation, and instead throws up a series of irrelevant or misguided arguments.   First, Shelton relies on *Kaelin v. Globe Communications* to make the uncontroversial point that a statement made in a headline can be defamatory under certain circumstances.  Opp. Br. 8:15-9:16, citing 162 F.3d 1036 (9th Cir. 1998).  Indeed, Bauer acknowledged in its moving brief that a cover headline is actionable independent of the accompanying article where "the totality of the circumstances showed the editor's intent to mislead readers."  Def. Mem. 10:21 n.7, citing *Kaelin*, 162 F.3d at 1041.  However, Shelton has not (and cannot) show here that Bauer intended to mislead readers.  To the contrary, Bauer's stated intent was to report that Shelton "refused to get help or to go to rehab" (Perel Decl. ¶¶6-7), which is entirely consistent with both the Article and Shelton's own statements.[8]

Second, Shelton attempts to introduce expert testimony in an effort to prove that his own reading of the Article is correct and Bauer's reading is incorrect.  As a threshold matter, it is the Court's role to "determine if the communication reasonably carries with it a defamatory meaning."  *Forsher v. Bugliosi*, 26 Cal. 3d 792, 804, 163 Cal. Rptr. 628, 634 (1980).  Moreover, "California courts in libel cases have emphasized that the publication is to be measured… by the natural and

---

[8] *Compare,* Def. Mem. 10:18-20 ("[T]he Article is clear that Shelton has not gone to rehab, that he 'won't listen' to calls for him to go to rehab' and that he is 'throwing himself into the new season of *The Voice*") *with* Shelton Decl. ¶3 ("Not only was I not in rehab or headed to rehab when it was published, but I also do not have a drinking problem"), ¶8 ("I was not in rehab in September 2015.  I have never been to rehab, nor have I ever considered going to rehab").

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

probable effect of the mind of the reader." *Kaelin*, 162 F.3d at 1040.  The Article, including its headlines, do not require some kind of sophisticated understanding of the English language.  There is no benefit to the "information sufficiently beyond common experience" that plaintiff's expert, Dr. Hawkins, purports to provide.  In short, the Court requires no assistance in understanding what the Article means. [9]

But Shelton's most fundamental error is to argue that this Court should endorse a view, supposedly held by some undefined "respectable minority," that holds in "contempt" those who enter rehab for drinking issues.  Opp. Br. 12:3-5.[10] Shelton turns to the "substantial and respectable minority doctrine" to try and find support for a position that is at fundamental odds with public policy and common sense.  *Id.* 11:15-12:5.  In fact, the law is to the contrary.[11]  Even when it is evident that "a communication tends to prejudice another in the eyes of even a substantial group [this] is not enough [to sustain a libel claim] if the group is one whose

---

[9] Shelton wrongly assumes that "information sufficiently beyond the common experience" (Opp. Br. 10:6) is of any use to the Court, since "hair splitting analysis of language has no place in the law of defamation." *Barger v. Playboy Enterprises, Inc.*, 564 F. Supp. 1151, 1154-55 (N.D. Cal. 1983), *aff'd without opinion*, 732 F.2d 163 (9th Cir. 1984) (dismissing libel claim) (citations omitted).The expert report of Professor Hawkins should be stricken for the reasons fully set forth in Defendants' Evidentiary Objections to Declaration of John A. Hawkins in Support of Plaintiff's Opposition to Defendants' Special Motion to Strike Complaint ("Hawkins Objections").

[10] Shelton's sole authority for his "respectable minority" agreement is a single case that was decided more than one hundred years ago. *Peck v. Tribune Co.*, 214 U.S. 185, 188 (1915). The case is readily distinguishable. In *Peck*, the plaintiff's likeness was featured in a whiskey advertisement notwithstanding she was, unlike Shelton "a total abstainer from whiskey and all spirituous liquors." *Id.* at 189. The "respectable minority" was plaintiff's fellow teetotalers. *Id.* at *189. However, courts will not countenance the views of a group with anti-social standards. Unlike teetotalers, there is nothing "respectable" about individuals who would think badly of a person seeking treatment for a drinking problem. The Court should not endorse such an anti-social viewpoint.

[11] Shelton also argues that it is defamatory to report that a person went to rehab because while "some people might think seeking treatment is a positive thing, most – and certainly a 'respectable minority' – would not." Opp. Br. 11:15 Contrary to Shelton's assertion that "going to rehab reflects an inability to manage one's health and affairs," the opposite is true. Opp. Br. 12:18-19.  It is in fact commendable for a person to tackle his or her drinking issues in rehab.  For Shelton to suggest otherwise is offensive to people who have sought to take control of their drinking by seeking treatment.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

standards are so anti-social that it is not proper for the courts to recognize them." *Agnant v Shakur,* 30 F. Supp. 2d 420, 424 (S.D.N.Y. 1998), citing Restatement (Second) of Torts § 559, cmt.e (1997); see also Def. Mem. 11:1-12:3 (citing cases). Similarly, "courts will not condone theories of recovery which promote or effectuate discriminatory conduct." *Polygram Records v. Superior Court*, 170 Cal. App. 3d, 543, 556, 216 Cal. Rptr. 252, 262 (1985) (rejecting defamation claim premised on "repugnant" theory contention that statement disparaged product by associating it with African Americans).

In other words, a statement is not defamatory if the negative reaction of even a "substantial group" of people to that statement is against public policy.  Since "no right thinking person" could disapprove of a person with drinking issues electing rehab – where the factual predicate, excessive drinking, is substantially true – there is nothing defamatory about reporting Shelton was in rehab or that the people close to him told him to go.[12]

Shelton's auxiliary argument – that the Article "injure[s] Shelton in his occupation as a television personality, musician and spokesperson" (Opp. Br. 12:7-9) – also rings hollow in light of the fact that Shelton has staked his professional reputation on the same irresponsible consumption of alcohol that the Article reports on.  As Bauer explains in its moving papers, "Shelton cannot show that an Article about his excessive drinking 'tarnished both his personal and business reputation' (Compl. ¶29)  because his personal and professional reputation is synonymous with

---

[12] Not one of the cases Shelton cites helps his opposition because, unlike here, in those cases, the statement at issue was both capable of a defamatory meaning and not substantially true.  In *Kaelin,* for instance the statement at issue was that police believed that "Kato committed the murders" of Nicole Simpson and Ronald Goldman, which was indisputably false. *Kaelin,* 162 F.3d at 1040. *See also Nguyen-Lam v. Cao,* 171 Cal. App. 4th 858, 869, 90 Cal. Rptr. 205, 213 (2009) ("[D]efendant had no basis for his claim plaintiff was a Communist"); *Ward v. Klein,* 809 N.Y.S.2d 828, 833 (Sup. Ct. N.Y. Cty. 2005) ("plaintiff's complaint… does not admit there was a sexual component to their relationship"); *Pacquiao v. Mayweather*, 803 F. Supp. 2d 1208, 1212 (D. Nev. 2011) (plaintiff denied using performance enhancing drugs).

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

drunkenness." Defs. Mem. 12:21-13:1. The impact of nearly fifty pages of signature "Drunk" tweets and the many statements Shelton made to the press celebrating his own drunkenness make this conclusion inescapable. *See*, *e.g.*, Perel Decl. ¶¶18-26. Even by his own admission, "Shelton has cultivated an entertainment persona playing off the stereotype of a fun-loving, down-to-earth country boy who likes to drink and do crazy things." Opp. Br. 4:23-25.[13] By attempting to walk this reputation back, Shelton has created an untenable situation where he challenges a report that he "drink[s] vodka before 11.00 a.m" (Shelton Decl. ¶8), after previously announcing to millions of people: "Woah!! Almost 11:00… Can't believe I'm up so early… This calls for a drink." Perel Decl. ¶20.

At bottom, Shelton's words and deeds amply demonstrate that, as the Article reports, "he loves to get hammered and he'll be the first one to tell you that," a statement that Shelton conspicuously fails to challenge either in his complaint or retroactively in the Stein declaration. *See* Compl. ¶ 26; Stein Decl. ¶13. Shelton attempts to detach himself from his own richly-cultivated reputation by claiming that he merely "jokes about drinking" (Opp. Br. 8:7) and that "[d]rinking or comments about drinking is part of my shtick with my fans." Shelton Decl. ¶12. In reality, Shelton has intertwined his personal, public and professional lives to such an extent that he cannot claim to be like a stage actor who inhabits his "theatrical persona" only while onstage. Opp. Br. 16:21. Rather, Shelton is a musician and

---

[13] After dismissing any concern by his record label with his well-established "Drunk" persona, with nothing more than a shrugged "Yeah, I drink a lot," (Perel. Decl. ¶21, Ex. F) it appears that Shelton may have finally realized that his excessive drinking may conflict with his business interests. Apparently, the possibility of a lost business deal with Pernod drove this home and seems to have motivated this action. Shelton Decl. ¶¶17-19. And no doubt this also helps to account for Shelton trying to clean up his Twitter feed, by deleting a large number of his "Drunk" tweets – a potential destruction of evidence that Shelton does not rebut in his opposition. Def. Mem. 3:21 n. 3. At the same time, the Article does not suggest, as Shelton claims it does, that Shelton was "unable to do the various jobs Shelton was doing, or had plans to do" when the Article was published. Opp. Br. 12:9-11. Quite the opposite, the Article reported that Shelton was "throwing himself into the new season of *The Voice*." Perel Decl. Ex. A

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reality television personality, who plays off of his reputation as a hard drinking "down-to-earth country boy." *Id*. at 4:24.  After sending  hundreds of messages from his personal Twitter account to millions of people boasting about how he gets drunk practically every day, as one news report found:  Shelton "has nobody to blame but himself as he keeps talking about his drinking and giving fans an impression that he might be tipping the bottle a bit too much."  Perel Decl. ¶21, Ex. F; Ex. C at 16 (examiner.com article).

Indeed, when Shelton has had an opportunity to explain that his drunken persona is just a "shtick," he has refused to do so.  Thus, when CNN asked him about his "signature 'I'm so drunk…' messages" in an interview, he replied "I drink alcohol and always will until I die and I don't care if you like it or not."  Perel Decl.¶22.  Then, Shelton drove his point home by declaring that he would not do "anything that's going to get me in more trouble than being wasted all the time already get me in." *Id.*  Shelton disingenuously rationalizes this defiant commentary as "a completely unremarkable statement that could be made by any person who responsibly enjoys a glass of wine a day."  Opp. Br. 22:2 n.46.  Simply put, Shelton has had opportunities to publicly clarify that he was only joking about his outlandish drinking.  However, he elected to affirm his reputation for drunkenness instead and cannot now complain that the Article reports the same behavior that he has so long celebrated.

Finally, Shelton is incorrect when he argues that "the predicate to rehabilitation (alcoholism) does not exist" and thus it is impossible to find that the Article's description of his drinking to be substantially true.  In *Vogel v. Felice* – a case Shelton does not mention, let alone rebut –the plaintiff also challenged a statement that characterized him as a "Drunk." 127 Cal. App. 4th 1006, 1021, 26 Cal. Rptr. 3d 350, 363 (2005).   Just as Shelton denies he has "a drinking problem" (Shelton Decl. ¶3), the plaintiff in *Vogel* "denied being an alcoholic."  *Id*.  However, the  court concluded that the "Drunk" claim was substantially true notwithstanding

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the denial in light of plaintiff's inability to deny that "he consumed alcohol to the point of inebriation, or that he had done so often or that he liked to do so." *Id*. At bottom, since the gist of the Article is substantially true, according to Shelton's own words and actions, any "minor factual errors… cannot serve as the basis for a defamation claim." Def. Mem. 14:27-15:5, citing *Partington v. Bugliosi*, 56 F.3d 1147, 1161 (9th Cir. 1995).[14]

## B. Shelton Is Libel Proof Concerning his Excessive Drinking

Application of the libel proof doctrine is appropriate under the facts of this case because Shelton has deeply ingrained irresponsible drinking into his reputation.[15]  The case Shelton relies on – *Stern v. Cosby* – is readily distinguishable. 645 F. Supp. 258 (S.D.N.Y. 2009).  In *Stern*, the reported conduct at issue "was substantially different from the conduct that was the subject of the allegations swirling in the tabloid media." *Id*. at 271.  Here, there is nothing to suggest that the Article is "much more egregious and extreme" than the prior reports of Shelton's drinking.  Opp. Br. 17:1-3.  Indeed, precisely the same allegations Shelton complains of – that his inner circle had urged him to go to rehab because of his drinking – were previously published in other articles.  *See* Perel Decl. Ex. H.

This case is analogous to other cases where plaintiff's own statements and media reports have cemented his or her reputation for a particular trait.  For example, in *Guccione v. Hustler Magazine*, the court held that the plaintiff was libel proof "on the subject of adultery" based on his own testimony that he lived with

---

[14] It is also indisputable that the Article accurately reported that Shelton "drink[s] liquor from a plastic cup while taping *The Voice*."  Perel Ex. A.  While Shelton denies being "unable to perform [his] job" because of drunkenness, a record executive confirms that "[t]here are occasions on which [Shelton] might have an alcoholic beverage" during tapings on *The Voice*.  Vause Decl. ¶12.

[15] As a threshold matter, while Shelton argues that "no state Court has ever applied" the libel-proof doctrine, this Court has applied it in dismissing a defamation claim.  *See Wynberg v. Nat'l Enquirer*, 564 F. Supp. 924, 928-29 (C.D. Cal. 1982).

---

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

another woman while married and on articles that provided evidence of his "poor reputation on the subject of adultery."  800 F.2d 298, 304 (2d Cir. 1986); *see also Wynberg v. Nat'l Enquirer*, 564 F. Supp. at 928-29 (C.D. Cal. 1982) (finding that plaintiff was libel proof regarding "specific reputation for taking financial advantage of Elizabeth Taylor," based on numerous articles).  The staggering number of public statements Shelton has made celebrating his own excessive drinking, coupled with the many news reports concerning his reputation for irresponsible drinking, have made Shelton libel-proof with respect to excessive drinking.  Perel Decl. ¶¶18-26.

### C.   Shelton Challenges Non-Actionable Statements of Opinion

Shelton's opposition to Bauer's opinion argument relies on the incorrect assumption that the "facts upon which [Bauer] bases [its] opinion are either incorrect or incomplete."  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990).[16]  However, the statements at issue are opinions precisely because they reflect on the fully disclosed statements in the Article concerning Shelton's excessive drinking, including his celebration of being drunk, the fact that he drinks at work and the other unchallenged reports in the Article about Shelton's excessive drinking.  Perel Decl. Ex. A.  Because the Article discloses the salient and largely undisputed facts, the Restatement's observation – "the statement 'I think he must be an alcoholic is actionable' because it presupposes defamatory facts" – has no application here.  Opp. Br. 12:16-17, citing Restatement (Second) Torts §556.

The phrase "hit rock bottom" is clearly rhetorical hyperbole based on the numerous unchallenged facts disclosed in the Article concerning Shelton's irresponsible drinking.  The dictionary definitions Shelton provides – "the lowest

---

[16] The three challenged statements Bauer identifies as opinion are "Blake has hit rock bottom,"  "Blake's drinking and womanizing are what helped torpedo his four year marriage to Miranda" and that his friends think he should go to rehab.  Def. Mem. 15:7-10.  The latter is expressing the view of friends and, even if false as Shelton now claims, it is a view that is not defamatory.  *See, supra,* at 8-13.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

level or point" or "the lowest possible level or in the worse situation" – merely underscore that the statement cannot be proven true or false, since there is no way to ascertain with any objective certainty that Shelton has reached "his lowest point." *See also*, *Campanelli v. Regents of the Univ. of Cal.*, 44 Cal. App. 4th 572, 580, 51 Cal. Rptr. 2d 891, 896 (1996) ("[T]he general public would not reasonably expect [the lay observer] to be making an observation which could be proven true or false in a medical sense.").[17]

Similarly, while he acknowledges that the word "torpedo" might "conceivably be hyperbolic," Shelton nonetheless argues that the statement "Blake's drinking and womanizing are what helped torpedo his four year marriage to Miranda" is a statement of fact because it implies Shelton "'did' something 'while wasted that ruined his marriage.'" Opp. Br. 15:15-18. This reading is incorrect on its face, because the expression "drinking and womanizing" clearly refers to the many unchallenged incidents reported in the Article, rather than one particular event. The "drinking and womanizing" statement actually addresses the question of what may, or may not, have "helped" end Shelton's marriage, which is an intrinsically complicated and objectively unanswerable question.

**D.   Shelton's Libel Claim Fails Because he Cannot Establish Actual Malice**

**1.   The Complaint Fails to Adequately Plead Actual Malice**

Shelton effectively makes no response to Bauer's showing that he failed to plead actual malice, which requires dismissal of the Complaint. Def. Mem. 20:2-21:17.[18] To survive this SLAPP motion, Shelton must establish that the Complaint

---

[17] The cases Shelton cites are distinguishable, because being "drunk on the bench" is objectively verifiable as a matter of blood alcohol level and whether a brokerage acted "unethical[ly]" is verifiable as a matter of law. Opp. Br. 15:13 n. 31, *citing Standing Comm. On Discipline v. Yagman*, 55 F.3d 1430, 1441 (9th Cir. 1995), *Willbanks v. Wolk*, 121 Cal.App.4th 883, 905, 17 Cal. Rptr. 497, 511-12 (2004).

[18] No doubt recognizing the futility of doing so, Shelton does not dispute that he is a public figure, and that the actual malice standard applies.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

contains "specific allegations that would support a finding that [defendant] harbored serious subjective doubts as to the validity of his assertions." *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014). Instead of identifying relevant allegations and explaining why they clear the pleading threshold, Shelton gestures lamely towards a list of paragraphs without providing any explanation or analysis whatsoever. Opp. Br. 17:18 n. 35 ("Contrary to the Motion, Shelton has adequately pled actual malice. *See* Compl. ¶¶ 19-23, 23, 28, 30-32, 38-39, 41, 51-52, 54.").

Shelton's failure to identify specific allegations is not surprising, because he has simply failed to plead any. As Bauer established in its moving brief, the Complaint consists of conclusory statements that "The Rehab Story was published with malice, or a reckless disregard for the truth" (Compl. ¶30) and threadbare statements "merely point[ing] to the fact that Defendants should have found more corroborating evidence." *Beckham*, 2011 U.S. Dist. LEXIS 32269, at *4. Such allegations are patently insufficient.

Nor should the Court permit Shelton to amend the Complaint.[19] The case Shelton cites in support of his argument is inapposite. In that case, the court allowed plaintiff to amend because it emerged that "defendant **had no basis** for his claim plaintiff was a Communist" after he effectively admitted making the story up in a sworn declaration. *Nguyen*, 171 Cal.App.4th at 862. In that case, therefore, the purpose of the SLAPP law – to allow early dismissal of meritless claims that impact free speech – would not be thwarted because it was beyond dispute that plaintiff had shown a likelihood of success. *Id.* at 869. Here, Shelton cannot show a likelihood of success and to allow him to amend his Complaint would defeat the purpose of the SLAPP law by delaying the prompt disposition of this case. *See, e.g.*, *Santa*

---

[19] The same considerations identified above in the context of pleading additional defamatory statements – namely "undue delay, prejudice to the opposing party, and the existence of a pending summary judgment" – weigh against allowing Shelton to correct his deficient pleading of actual malice. *Dula v. Calop Bus. Sys.*, CV 10-04091 SJO (JCGx), 2011 U.S. Dist. LEXIS 155648, at *8 (C.D. Cal. Jul. 20, 2011). *See supra* 7.

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Rosa Press Democrat*, 2011 U.S. Dist. LEXIS 121449, at *20 ("[L]eave to amend is not necessary or appropriate" where defendant prevails on SLAPP motion to strike).

### 2. Shelton Cannot Show Even a Likelihood of Proving Actual Malice by Clear and Convincing Evidence

At bottom, Bauer's motion to strike is based not on whether the Article is true or false, but simply on the fact that Bauer did not publish the Article with actual malice – the constitutionally required fault for holding defendants liable for defamation.  As Bauer explains in its moving brief, "[t]he standard of actual malice is a daunting one" for a public figure like Shelton to meet.  *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996).  "It is not enough for [Shelton] to show that [Bauer's] statements were inaccurate or unreasonable.  Rather, [Shelton] was required to demonstrate by clear and convincing evidence [Bauer's] willful falsity or reckless disregard for the truth."  *Beckham*, 2011 U.S. Dist. LEXIS 32269, at *5.

Even assuming *arguendo* that the declarations Shelton submits could establish that aspects of the Article are not true – which Bauer does not agree with – this still does not suffice because "even if [the Court] were to assume that the statements made by the affiants were true, they would not alter [Bauer's] uncontested showing that the published articles were based on documented evidence." *Liberty Lobby Inc. v. Rees*, 852 F.2d 595, 599 (D.C. Cir. 1988).[20]  Here, the Article, and each of the challenged statements, was entirely consistent with the public persona Shelton had cultivated and countless previously published reports.

---

[20] Bauer do not concede that any of the statements in the Article are false, even in light of Shelton's assertions to the contrary.  In particular, while Shelton challenges the accuracy of information obtained from Alexsandra Wright (Shelton Decl. ¶20) and makes an unwarranted ad hominem attack on her credibility (Opp. Br. 23:21 n. 49), Ms. Wright has been a longtime source for *In Touch* whose reporting has always turned out to be credible.  *See* Schwartz Decl. ¶16.  Moreover, contrary to Shelton's baseless assertion (Opp. Br. 23:21 n. 49), the fact that Ms. Wright signed an agreement with Bauer warranting the accuracy of her reporting increased her credibility (rather than diminishing it).  Schwartz Decl. ¶20, Ex. P.

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Bauer's editors were well aware of these reports, including prior reports that others had urged Shelton to go rehab or that his drinking had increased following his divorce from Lambert.  Perel Decl. ¶¶ 18-26; Schwartz Decl. ¶ 9-21.  Shelton fails to distinguish the wealth of cases where libel actions were dismissed on factual records far weaker than this one.[21]  Instead, Shelton puts forth a series of arguments that taken individually, or collectively, fail to meet his burden.[22]

First, Shelton argues that Bauer's sources are not reliable or credible. Opp. 20-23.  Yet, the most important source Bauer relied on is Shelton himself, who is responsible for the bulk of the statements that corroborate the Article. Indeed, Shelton does not mention (let alone rebut) the Ninth Circuit's common sense observation that a publisher cannot be faulted "for relying on [the plaintiff's] own statements."  *Newton*, 930 F.2d at 684.  Nor is Shelton correct when he asserts "[t]here are no 'prior reports' that gave the impression that Shelton was actually in or on his way to rehab." Opp. Br. 21:1-2.  To the contrary, Bauer has established that it relied on numerous prior reports concerning Shelton's drinking, including a 2013 *National Enquirer* article reporting "Miranda Begs Boozy Blake to Rehab" and other articles that reported sources stating that drinking was taking a negative toll on Shelton's wellbeing.  Perel Decl. ¶18-26, Exs. H, I, J, K; Schwartz Decl.

---

[21] *See D.A.R.E. America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1281-1286 (C.D. Cal. 2000) (insufficient evidence of actual malice despite plaintiff's contentions that magazine: (1) relied on a non-employee journalist who gave "fabricated quotes" and "wholly concocted" information to magazine; (2) "failed to contact [plaintiff]"; (3) had a "motive to write [the] story with a particular slant"; and (4) refused to "retract defamatory statements"), *aff'd*, 270 F.3d 793 (9th Cir. 2001); *Levan v. Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1241 n.33, 1243 (11th Cir. 1999) (insufficient evidence of actual malice despite plaintiff's contentions that defendant:  (1) stated that "the truth is irrelevant to me"; (2) chose "not to include statements" favorable to the plaintiff; and (3) knew that there was a "[d]ifference of opinion as to the truth" of the allegations).

[22] The "first-hand testimony of people who actually know Shelton" is also irrelevant here because these post-facto revelations have no bearing on Bauer's state of mind at the time the Article was published, especially since none of these individuals acted as Bauer's sources. Opp. Br. 12:14.

REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
DWT 29164407v6 0069628-000039

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

¶7.[23]  There can be no finding of actual malice where, as here, "the publisher's allegations are supported by a multitude of previous reports upon which the publisher reasonably relied." *Rosanova v. Playboy Enters.*, 580 F.2d 859, 862 (5th Cir. 1978).[24]

Perhaps most troubling is Shelton's effort to undermine Bauer's multiple sources concerning Shelton's "partying" at the ME Melia resort in Cancun, Mexico. In his sworn statement Shelton states unequivocally that "I did not stay at the hotel ME Melia, Cancun, or visit it" during his August 2015 trip to Mexico.  Shelton Decl. ¶14; *see also* Opp. Br. 11:16. Yet, prior to publication, Bauer had in its possession a photograph posted to a woman's Instagram account on August 30, 2015, clearly showing Shelton posing with his arm around the woman in a room with a distinctive tile pattern, lights, drapes and round rug.  Supp. Schwartz Decl. ¶¶4-11, Ex. Q.  This backdrop precisely matches publicly available photographs of the distinctive ME Melia lobby and could only have been taken in that hotel.  *Id*. ¶11, Exs. Q, S, T.  Moreover, a twitter post from the same woman linking to this photograph makes it clear that the photograph was taken at the ME Melia: "Just hangin out with Blake Shelton in cancun last night [emojis] @ **ME Cancun**."  *Id*. ¶9, Ex. R (emphasis added).[25]  This is the "cute blonde who was a Miranda Lambert

---

[23]  At the same time, Shelton tries to sweep these reports aside by noting that he challenged these reports "in his own way" by posting flip comments on Twitter that cannot reasonably be seen as an actual denial.  Opp. Br. 21:3-4; *see, e.g.,* Perel, Ex. M ("Newest tabloid is that I'm having heart problems.  That's ridiculous.  It's my liver that is focked.").  Even assuming *arguendo* that Shelton's posts could be construed as denials, actual malice "cannot be predicated on mere denials, however vehement," because "such denials are so commonplace… that, in themselves, they hardly alert the conscientious reporter to the likelihood of error."  *Edwards v. Nat'l Audubon Society*, 556 F.2d 113, 121, (2d Cir. 1977); *see also, Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359, 42 Cal. Rptr. 2d 464 (1995)(rejecting "boilerplate denial of wrongdoing" as evidence of actual malice).

[24]  *See also Liberty Lobby Inc.*, 852 F.2d at 599 (D.C. Cir. 1988) ("[D]efamation defendants will not be forced to defend, nor will a trial judge in a later libel case have to retry, the truthfulness of previous reports made by independent publishers") (citation and internal quotations omitted).

[25]  The "emoji" symbols that accompany the Instagram caption are a smiling face, a woman fanning herself, a flame and a heart.  *Id*.  Taken together with the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

lookalike," with whom Shelton had a "rendezvous," just as the Article reported. Perel Decl. Ex. A. Therefore, Shelton's entire account of the trip as a chaste affair with no "hook[ing] up with women… in my hotel room or anywhere else" and not even a "visit" to the ME Melia hotel is false. Shelton Decl. ¶¶13-15, Opp. Br. 5:11-6:4.[26]

Nor is Bauer required to rely on "official proceedings, court or government documents, scientific studies or even prior in depth journalistic reports" for the purposes of its celebrity news reporting. Opp. Br. 21:1 n. 43. Courts have routinely held that a defamation plaintiff cannot show actual malice when a publisher relied on corroborating articles, even if those articles appeared in "sensationalist tabloid" publications. *Eastwood v. National Enquirer*, 123 F.3d 1249, 1254-55 (9th Cir. 1997) (no actual malice where "similar material had been published in two other publications," notwithstanding plaintiff's assertion that at least one publication was a "sensationalist tabloid").[27] Bauer's reliance on prior articles from myriad reliable sources of news – including CNN, *The Examiner* and Shelton's own Twitter feed –

---

intimacy of the picture's pose, this denotes that a romantic encounter took place. *Id*. ¶8.

[26] The fact that Shelton was at the ME Melia in Cancun – despite his denials – is further supported by a *People* magazine article published shortly after the Article, reporting on the same events. Schwartz Supp. Decl. ¶12, Ex. U. That article reports that "Blake had a fun weekend and enjoyed his single life," says an insider at the ME by Melia resort. "he had fun with girls and seems to enjoy the attention. *Id.*

[27] The Court in *Eastwood* did find actual malice with respect to one issue: whether the published interview was an "exclusive." 123 F.3d at 1256. As to that limited question, it was beyond dispute that the editors knew that they did not interview Eastwood directly, which meant that their presentation of the article to the public as if they had was done with the requisite knowledge to support a finding of actual malice. *See also D.A.R.E. America*, 101 F. Supp. 2d at 1281-1286 (reliance on *New Republic* article justified), *Associated Financial Corp. v. Financial Services Information Co.*, No. CV-88-6636 SVW (Sx), 1989 U.S. Dist. LEXIS, 16263, at *21-22 (C.D. Cal. Jul. 21 1989) (no actual malice where publisher relied on 12 year old Forbes article because actual malice cannot be established "by merely asserting that the *Forbes* article is dated or biased or that the Article's editors and authors did not conduct additional investigations"); *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1264 (S.D.N.Y. 1989) (no actual malice where publisher "claim[s] that they relied on published articles which appeared in the *Village Voice* and *Sports Illustrated*").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

is more than enough to preclude a finding of actual malice.  Perel Decl. ¶18-26, Exs. C, D, H, I, J, K; Schwartz Decl. ¶7.

Moreover, Shelton is incorrect when he argues (without any support from cases) that Bauer is not entitled to rely on its own prior reporting regarding Shelton, his drinking and his womanizing.  In another SLAPP case involving an *In Touch* magazine article, the court found that the fact that Bauer "researched similar stories… in the past, and gave Plaintiff the opportunity to respond to such stories" weighed against finding a likelihood of proving actual malice.  *Beckham*, 2011 U.S. Dist. LEXIS at *4.  As Bauer establishes, it has reported similar statements to those challenged here without any objection from Shelton (Perel Decl. Ex. 2 at 2) and Bauer also gave Shelton the chance to respond to the Article he challenges here. Perel Decl. ¶10-12, Ex. B.

Shelton also seems to confuse "hearsay" as that word is used in the context of defamation cases with the concept of "hearsay" for the purpose of determining admissibility of evidence.[28]  Opp. Br. 22:11-23:21.  The two concepts are different. Simply put, newsrooms do not operate under the same evidentiary restrictions as law-courts and a journalist does not automatically act with actual malice because the information he or she reports came second or even third hand.[29]  Moreover, the fact that the Bauer editors had no reason to doubt the accuracy of their sources'

---

[28] For the reasons set forth more fully in Bauer's responses to Shelton's evidentiary objections to the Perel and Schwartz Declarations, as a matter of settled law, there is no evidentiary hearsay problem here since the statements regarding sourcing for the Article "are being offered not for the truth of the matter asserted, but to demonstrate defendants' state of mind and knowledge (*i.e.* actual malice) when they published the … articles."  *See Oao Alfa Bank v. Ctr. For Pub. Integrity*, 387 F. Supp. 2d 20, 53 n.54 (D.C. Cir. 2005).

[29] None of Shelton's cases are of any use to his argument.  In *Alioto*, the "hearsay nature" was one of many red-flags that are not present here, including "the time which had passed since the alleged events had taken place, … the general tenor of the … interviews, including the farfetched claims" therein and the fact that the journalist regarded the source as a "liar" and a "name dropper."  *Alioto v. Cowles Communs., Inc.*, 430 F. Supp. 1363, 1370 (N.D. Cal. 1977).  In *Burnett*, the editors "express[ed] doubts as to whether [the source] could be trusted."  *Burnett v. Nat'l Enquirer*, 144 Cal.App.3d 991, 999, 193 Cal. Rptr. 206, 210 (1983).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

reporting, coupled with the fact that Bauer relied on multiple sources all telling consistent stories, means that Shelton will not be able to prove that Bauer believed the Article was false or entertained a high probability of falsity by clear and convincing evidence. Schwartz Decl. ¶¶27-35, Perel Decl. ¶¶9-20.   Instead, Shelton "merely points to the fact that [Bauer] should have found more corroborating evidence," which is patently insufficient to show a likelihood of proving actual malice by clear and convincing evidence. *Beckham*, 2011 U.S. Dist. LEXIS 32269, at *4.

Second, Shelton clings to the mistaken belief that he can plead and prove actual malice simply by asserting Bauer did not give Shelton adequate opportunity to comment on the Article.  But it is well established that "[f]ailure to verify… is inadequate as a matter of law to establish actual malice." *Sanders v. Hearst Corp.*, No. C 98-04554 MMC, 1999 U.S. Dist. LEXIS 23354, at *5 (N.D. Cal. Feb. 22, 1999).  Similarly, in case after case, failure to obtain comment does not support a finding of actual malice.  *See, e.g., D.A.R.E. America,* 101 F. Supp. 2d at 1284 ("[A] defendant has not acted with reckless disregard of the truth by failing to contact the subject of a planned publication.").[30]

Even so, Bauer actually did give Shelton an adequate opportunity to respond. Before publishing the Article, Shelton sent an email to Shelton's representative at his record label seeking comment on a "story that some of [Shelton's] friends think he parties too hard, and friends are worried if he goes too far he'll need to go to rehab."  Perel Decl. ¶10-12, Ex. B.  Bauer had no reason to believe that the representative, Wes Vause, was not the right person to ask for comment because he had previously responded to inquiries from *In Touch* about stories involving

---

[30] *See also Eastwood*, 123 F.3d at 1254 n. 10 ("[Plaintiff] makes much of the… failure to call him or any of his representatives" for comment but "[t]here was… no requirement that the [publisher] make such a call."); *Secord v. Cockburn*, 747 F. Supp. 779, 789 (D.C. Cir. 1990) ("If the caselaw is clear on any point it is that the author is under no duty to divulge the contents of a book prior to publication in order to provide the subject an opportunity to reply.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Shelton.[31]  Remarkably, Shelton neglects to mention that when Bauer received an automatic reply from Mr. Vause, the message was forwarded to Mr. Vause's assistant, as the automatic message directed the recipient to do.  Perel Decl. Ex. B.  Moreover, according to his own declaration Mr. Vause apparently saw the message before the deadline but "was not able to reach Mr. Shelton's management team" in time to get a comment.   Vause Decl. ¶7.  In short, although Shelton had no responsibility to reach Shelton for comment before publishing the Article, it made diligent efforts to do so and those efforts provide no inference of actual malice.

Third, Shelton also fails to establish that the "headline evidences a reckless disregard for the truth" because the cases he relies on do not support such a finding here.  Opp. Br. 19:5.  In *Kaelin*, the most compelling evidence in favor of determining that a jury could find actual malice was deposition testimony from the editor of the defendant publication establishing that "he saw the headline before it ran and did not think that it 'was very accurate to the story.'"  162 F.3d at 1042.  However, there is no evidence in this case that the Bauer editors harbored any such doubts about the accuracy of the cover.  Perel Decl. ¶¶13, 36, Schwartz Decl. ¶9.[32]  Furthermore, it is entirely inappropriate for Shelton to use his expert in an attempt to manufacture evidence about the state of mind of Bauer's editors.[33]  Even so, the

---

[31] Indeed, Shelton's attorney acknowledged that Wes Vause functioned as a "publicist" for Shelton in the past in a letter he wrote to Bauer. *See, e.g.*, Stein Decl. Ex. 2 ( "On July 23, 2015… Bauer Publishing's Alexis Chiu asked Wes Vause, a publicist for Blake Shelton, a series of questions…. Mr. Vause forwarded this question to Ms. Lambert's publicist…, who responded on [Blake and Miranda's] behalf; *see also* Vause Decl. ¶3 ("On behalf of Mr. Shelton, I handle matters related to his job on *The Voice*, and tour or concert related publicity.").

[32] The other cases Shelton cites in support of his argument are inapposite for the same reason. *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1085-86 (9th Cir. 2002) (relying on evidence from editors expressing concern that headline was not accurate); *Sprouse v. Clay Commns.*, 211 S.E.2d 674, 682 (W.Va. 1975) ("The evidence strongly supports a jury inference that the defendant knew the conclusions to be drawn from the headlines were false and further that the defendant anticipated that these false conclusions would logically flow from its presentation.").

[33] "Courts have generally not permitted plaintiffs to prove actual malice through expert testimony." *Oao Alfa Bank* , 387 F. Supp. 2d at 56; *see also* Hawkins Objections.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

expert's speculation about "'speech acts' governed by certain 'appropriateness conditions'" is of absolutely no help to Shelton in showing that  he can prove that Bauer knew that the Article was false or had serious doubts by clear and convincing evidence.

Fourth, Shelton has shown no reason whatsoever that justifies the inference that Bauer's failure to retract the story constitutes actual malice.  Opp. Br. 24:6-18. "There is no authority to support [Shelton's] argument that a publisher may be liable for defamation because it fails to retract a statement upon which grave doubt is cast after publication." *D.A.R.E. America*, 101 F. Supp. 2d at 1287.  The court in *D.A.R.E* expressly rejected the case Shelton now relies on – *Church of Scientology v. Dell Publishing* – because that case "merely noted that the Supreme Court left open the question… whether a failure to retract could ever constitute evidence of actual malice in the defamation context. *Id*. citing *Church of Scientology v. Dell Publishing*, 362 F. Supp. 767, 770 (N. D. Cal. 1973). [34]  Moreover, contrary to Shelton's assertion, nothing that has been reported since the Article was published raises any doubt that the central premise of the Article – that Shelton's excessive drinking is having a negative impact on his wellbeing – is false.[35]

---

[34] The Court should deny Shelton's request for discovery because it would be futile.  As a matter of law, the Article is not actionable because it is not defamatory and substantially true.  Moreover, Shelton's failure to plead actual malice means that the Court can dispose of this case without any discovery on the subject of actual malice.  Last, the sourcing Bauer has already provided (which relies on multiple independent sources and numerous news reports), together with the insurmountable body of evidence Shelton has provided about his own heavy drinking, is more than enough to defeat any actual malice argument Shelton might make with the benefit of discovery.  *See Santa Rosa Press Democrat*, 2011 U.S. Dist. LEXIS, at *21 (denying plaintiff's request "to take discovery on actual malice" since "[n]o amount of discovery would cure the deficiencies identified in plaintiff's claims")

[35] Contrary to Shelton's assertion, nothing in the record indicates that he has suffered any cognizable economic damages.  By his own admission, his endorsement deal with Pernod did not fall apart because of the Article.  Shelton Decl. ¶19, Blackstock Decl. ¶10 *See Forsher*, 26 Cal. 3d at 796-803, 163 Cal. Rptr. At 629-634 (1980) (To be sure, appellant has alleged he "has suffered in an amount, which, as yet, cannot be ascertained and which will be proven at trial." Such an allegation is insufficient. Appellant should have been able to plead injury to

---

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 3. Shelton's False Light Invasion of Privacy Claim Will Not Prevail

Shelton has essentially abandoned his duplicative false light claim by not addressing Bauer's argument that it fails for the same reasons as his libel claim, including his failure to establish actual malice and substantial truth. *See*, *e.g.*, *Partington*, 56 F.3d at 1160 (rejecting duplicative false light claim "for the same reason that we rejected… defamation claims based on those statements: both statements are protected by the First Amendment regardless of the form of tort alleged").

### CONCLUSION

Shelton cannot show a probability of success on either of his claims. Accordingly, Bauer respectfully requests that the Court grant this Motion and strike Shelton's Complaint without granting leave to amend.


DATED:  March 28, 2016          DAVIS WRIGHT TREMAINE LLP
                                ALONZO WICKERS IV
                                ELIZABETH A. McNAMARA (*Pro Hac Vice*)
                                JOHN M. BROWNING (*Pro Hac Vice*)


                                By:   /s/ Alonzo Wickers IV
                                            Alonzo Wickers IV

                                *Attorneys for Defendants*
                                Bauer Publishing Company, L.P., Bauer
                                Magazine L.P., Bauer Media Group, Inc., Bauer
                                Inc., Heinrich Bauer North America, Inc. and
                                Bauer Media Group US

property, business, trade, profession or occupation, if these interests have been injured even though the monetary extent might not have been ascertainable).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899