UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT (Dkt. 23, filed February 26, 2016)

## I.      INTRODUCTION

On October 19, 2015, plaintiff Blake Tollison Shelton ("plaintiff" or "Shelton") filed the instant action in the Los Angeles County Superior Court against defendants Bauer Publishing Company, L.P.; Bauer Magazine L.P.; Bauer Media Group, Inc.; Bauer, Inc.; Heinrich Bauer North America, Inc.; Bauer Media Group USA, LLC; and Does 1-20, inclusive (collectively, "defendants" or "Bauer"). Dkt. 1 (Notice of Removal), Ex. A (Compl.). Specifically, plaintiff asserts claims for (1) libel per se and (2) false light invasion of privacy based upon defendants' publication of allegedly false statements in the cover story headlines and an accompanying article in the magazine, *In Touch Weekly* ("*In Touch*"). See generally id. On November 20, 2015, defendants removed this action to federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Id.

On February 26, 2016, defendants filed the instant special motion to strike plaintiff's complaint, pursuant to California's Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") statute, Cal. Civ. Proc. Code § 425.16. Dkt. 23 ("Motion"). On March 16, 2016, plaintiff filed an opposition to defendants' motion. Dkt. 27 ("Opp'n"). On March 28, 2016, defendants filed a reply. Dkt. 29 ("Reply"). On April 5, 2016, plaintiff filed a "response" to a "peripheral issue" raised on reply. Dkt. 30 ("P's Response").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### *AMENDED CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

On April 11, 2016, the Court provided the parties with a tentative order and held oral argument on the instant motion.  Dkt. 34.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Plaintiff Blake Tollison Shelton is a "county music superstar" who is also known for his role as a judge on the television program *The Voice*.  Compl. at ¶ 16.  On September 16, 2015, *In Touch* published a cover story ("the Rehab Story" or "the Article") bearing the large print headline, "REHAB For Blake," beneath the circled phrase, "THE REAL STORY," in smaller font.  The headline was followed by the following four sub-headlines:

> "He Finally Hits Rock Bottom"

> "Drinking vodka before noon & slurring his words – it's worse than anyone knows"

> "What he did while wasted that destroyed his marriage"

> "How his friends begged him to stop joking about drinking & get help"

Compl., Ex. A.  A copy of the magazine cover is attached to the complaint in this action and is appended to this order.  See id.; *infra* Part VI, Figure 1.  Plaintiff alleges that, collectively, the cover's headline, "REHAB for Blake," and its sub-headlines "falsely and maliciously suggest[] that [plaintiff] is in rehab" when, in reality, plaintiff "is not in rehab and has no plans to go to rehab."  Id. at ¶ 25.  More specifically, plaintiff alleges that "the average reader was drawn to the magazine and the Rehab Story thinking that he or she is going to read that [plaintiff] 'bottomed out' and checked himself into rehab."  Id. Plaintiff further alleges that "[m]any readers will [simply] stop at the cover."  Id.

The complaint also specifically identifies the following "false assertions of fact" made in the Article itself, which "only reinforce[s] and support[s] the headline's message":

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

| | |
|---|---|
| [Statement 1, ¶ 26(a)] | "Blake has his rock bottom" |
| [Statement 2, ¶ 26(b)] | "His friends are terrified that he could end up dead at this rate" |
| [Statement 3, ¶ 26©] | "Blake's drinking and womanizing are what helped torpedo his four-year marriage to Miranda [Lambert]" |
| [Statement 4, ¶ 26(d)] | Mr. Shelton did something "while wasted that destroyed his marriage" |
| [Statement 5, ¶ 26(e)] | Mr. Shelton was "caught" by Ms. Lambert with "a bunch of naked women" in their home |
| [Statement 6, ¶ 26(f)] | Mr. Shelton started drinking at age fourteen as "a form of coping with his brother's death" |
| [Statement 7, ¶ 26(g)] | "His close friends have talked about an intervention"; and, |
| [Statement 8, ¶ 26(h)] | "Blake's friends, colleagues and handlers won't give up on him – and have all urged him to seek help." |

<u>Id.</u> at ¶ 26(a)-(h).

Plaintiff further alleges in more general terms that the Rehab Story is "replete with salacious falsehoods, including that [plaintiff] traveled to Mexico for a bachelor party where he partied with strippers, visited strip clubs, and got into a hot tub in his hotel room with two anonymous women."  <u>Id.</u>  Plaintiff avers that "[t]ogether with the headline, the story about Mr. Shelton's trip to Mexico . . . portray[s] [him] as a man unhinged and, as stated on the cover, a man at 'rock bottom,' " which is "patently false,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:15-cv-09057-CASAGR | | Date | April 18, 2016 |
|----------|----------------------|---|------|----------------|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | | |

has exposed plaintiff to "contempt, ridicule and obloquy," and has "tarnished both his personal and business reputation." Id. at ¶ 29.  Plaintiff also alleges more generally that "[t]he Rehab Story as a whole and each of the Statements [referenced in paragraph 26 of the complaint] are false as they pertain to Mr. Shelton."[1]   Id. at ¶ 36.

---

    [1]  Under California law, "[t]he general rule is that the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint." Kahn v. Bower, 232 Cal. App. 3d 1599, 1612 (Ct. App. 1991).  Plaintiff's complaint appears expressly to identify the "false statements set forth in . . . Paragraph 26 [of the complaint]" as the particular statements giving rise to plaintiff's libel claim.  Compl. at ¶ 26 ("Collectively, the false statements set forth in this Paragraph 26 will be referred to herein as the 'Statements.' ").  Accordingly, although Shelton also alleges that the Article "as a whole" is false, id. at  ¶¶ 35-36, such a general allegation does not suffice for purposes of pleading a libel claim, as the particular statements that Shelton challenges "must be set out in the complaint [such] that the defendant may have notice of the particular charge which he is required to answer."  Des Granges v. Crall, 27 Cal. App. 313, 315  (Cal. Ct. App. 1915).  In contrast, the California Supreme Court has held that "*slander* can be charged by alleging the substance of the defamatory statement," and that a slander claim is not "defective for failure to state the exact words of the alleged slander."  Okun v. Superior Court, 29 Cal.3d 442, 458 (1981) (emphasis added).  Therefore, the Court rejects plaintiff's contention that he may now challenge *all* of the statements in the Article simply because (1) he "attached the Rehab Story to the Complaint as an exhibit and incorporated it – in its entirety – by reference," (2) he "specifically identified the cover, its interior headlines, and various other statements therein as false and defamatory," and (3) he identified, in his causes of action, "the 'Rehab Story as a whole' ***and*** each of the 'Statements' that he specifically excerpted in Paragraph 26."  Opp'n at 13 n.25 (emphasis in original).  In light of the complaint's allegations, plaintiff may not now challenge each and every statement in the Article; however, plaintiff's failure expressly to allege in his complaint that certain statements are false and defamatory does not constitute a "tacit[] admi[ssion]" that such statements are in fact true, despite defendants' contention to this effect.  Motion at 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

According to the complaint, the Rehab Story "was published with malice or, at a minimum, a reckless disregard for the truth." Id. at ¶ 30. The complaint further alleges that, as with a prior story that Bauer published about Shelton, "Bauer did not even give [plaintiff] notice of what it intended to publish, or an opportunity to rebut any of the specific allegations set forth in the Rehab Story in advance of its publication." Id.

Based upon these allegations, plaintiff asserts a claim for libel per se. See id. at ¶¶ 33-44. In addition to his libel claim, plaintiff asserts a claim for false light invasion of privacy. See id. at ¶¶ 45-56. Specifically, plaintiff alleges that "[t]o the extent that all or any part of the Rehab Story as a whole or any of the Statements are found not to be defamatory of Mr. Shelton, the Rehab Story, and the Statements [contained therein] place Mr. Shelton in a false light which would be highly offensive to a reasonable person." Id. at ¶ 50.

## III.   LEGAL STANDARD

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'" Makaeff v. Trump Univ., LLC, 715 F.3d 254, 261 (9th Cir. 2013) (quoting Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003)) (internal quotation marks omitted). Specifically, the anti-SLAPP statute provides that any "cause of action against a person arising from any act of that person in furtherance of that person's right of . . . free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that [he or she] will prevail on the claim." Cal. Civ. Proc. Code § 425.16.

In ruling on an anti-SLAPP motion, the Court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Hilton v. Hallmark Cards, 599 F.3d 894, 903 (9th Cir. 2010). If defendant succeeds in doing so, the burden then shifts to the plaintiff to establish a "reasonable probability" of prevailing on the defamation claim. Batzel, 333 F.3d at 1024. That is, "plaintiff must demonstrate that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**           **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

complaint is both [1] legally sufficient and [2] supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." Hilton, 599 F.3d at 903 (citing Wilson v. Parker, Covert & Chidester, 28 Cal. 4th 811, 821 (2002)).[2] "The applicable burden 'is much like that used in determining a motion for nonsuit or directed verdict, which *mandates dismissal when no reasonable jury could find for the plaintiff*.' " Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 599 (9th Cir. 2010) (citation omitted) (emphasis added).  Notably, the court "does not weigh the credibility or comparative probative strength of competing evidence." Id. (emphasis in original).

"[W]hile the inquiry on the motion to strike may glance at the merits, its central purpose is to provide an added statutory protection from the burdens of litigation that is unavailable during the ultimate merits inquiry." Makaeff, 736 F.3d at 1185. Accordingly, to defeat a motion to strike, a plaintiff "need only have 'stated and substantiated a legally sufficient claim.' " Navellier v. Sletton, 29 Cal.4th 82, 88-89 (2002).  Stated differently, plaintiff's cause of action needs only to have " '*minimal merit*' " to survive an anti-SLAPP motion to strike. Cole v. Meyer & Assoc., 206 Cal.App.4th 1095, 1105 (2012) (emphasis added) (citations omitted); see also Hilton, 599 F.3d at 908 ("The California Supreme Court has sometimes suggested that suits subject to being stricken at step two are those that 'lack [] even minimal merit.' ") (citation omitted).  In other words,"the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.' " Makaeff, 715 F.3d at 261 (quoting Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001) (citation and internal quotation marks omitted)).  If, however, "the court denies an anti-SLAPP motion to strike, the parties continue with discovery. See § 425.16(g).  Once the plaintiff's case has

---

[2]  "Such [a] test is similar to the one courts make on summary judgment, though not identical.  Thus, if a plaintiff has stated a legal claim but has no facts to support it, a defendant could prevail on an anti-SLAPP motion, though he would not have been able to win a motion to dismiss." Hilton, 599 F.3d at 902.  "To evaluate an anti-SLAPP motion, the court must 'consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " Doe v. Gangland Prods., Inc., 730 F.3d 946, 953 (9th Cir. 2013) (quoting Cal. Code Civ. Proc. § 425.16(b)(2)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

survived the motion, the anti-SLAPP statute no longer applies and the parties proceed to litigate the merits of the action." Batzel, 333 F.3d at 1024.

## IV.   DISCUSSION

### A.   The Anti-SLAPP Statute Applies because Plaintiff's Claims Arise from Acts in Furtherance of Defendants' Free Speech Rights

The anti-SLAPP statute "is to be construed broadly." Hilton, 599 F.3d at 902.  In the instant case, the statute applies if plaintiff's claims arise from defendants' acts made "in furtherance of . . . [their] free speech" rights and "in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).  Pursuant to the statute, acts made "in connection with a public issue" include:

> [A]ny written or oral statement or writing made [by the defendant] in a place open to the public or a public forum in connection with an issue of public interest; [id. at § 425.16(e)(3)]
>
> or any other conduct [by the defendant] in furtherance of the exercise of the constitutional right . . . of free speech in connection with a public issue or an issue of public interest. [id. at § 425.16(e)(4)].

The Court concludes that under California law, defendants' publication of the Rehab Story and the associated cover page headlines constitutes an act made in furtherance of defendants' free speech rights and "in connection with a public issue" under both subsections (e)(3) and (e)(4) of the anti-SLAPP statute.

In particular, subsection (e)(4) extends the statute's protection to any conduct made "in furtherance of the exercise of the constitutional right . . . of free speech in connection

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

with . . . an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(4).[3]  Here, the topic of defendants' publication relates to a "public issue or an issue of public interest" under subsection (e)(4).  "Interpreting the California Supreme Court's pronouncements, [the Ninth Circuit has] 'construe[d] "public issue or public interest" . . . broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence.' "  Sarver v. Chartier, 813 F.3d 891, 901 (9th Cir. 2016) (quoting Hilton, 599 F.3d at 906) (second alteration in original).  Notably, the California Supreme Court has "declined to hold that [the anti-SLAPP statute] does not apply to events that transpire between private individuals."  Hilton, 599 F.3d at 905 (quoting Navellier, 29 Cal. 4th at 91).  Furthermore, "the activity of the defendant need not involve questions of civic concern; social or even low-brow topics may suffice."  Id.

       In conducting the relevant "public issue" analysis, the Ninth Circuit has relied upon two decisions of the California Courts of Appeal: Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., 105 Cal.App.4th 913 (2003) ("Rivero") and Weinberg v. Feisel, 110 Cal.App.4th 1122 (2003) ("Weinberg").  As the Ninth Circuit explained in Sarver:

> The California Court of Appeal for the First District has identified "three categories of public issues: (1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; (3) 'or a topic of widespread, public interest.' "  [Hilton, 599 F.3d at 906 (quoting Rivero, 105 Cal.App.4th at 924-25)].  California's Court of Appeal for the Third District has explained that " 'public interest' does not equate with mere curiosity," but instead "a matter of public interest should be something of concern to a substantial number of people."  [Weinberg, 110 Cal.App.4th at 1132-33.]

---

[3]  Of course, subsection (e)(4)'s reach, and constitutional "guarantees of freedom of expression [more generally], apply with equal force to . . . a news report or an entertainment feature."  Shulman v. Group W Prods., 18 Cal. 4th 200, 220 (1998).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

Sarver, 813 F.3d at 901.

    Applying the Rivero standard, the Ninth Circuit in Hilton found a greeting card company's use of celebrity Paris Hilton's catch phrase in a birthday card to constitute speech "in connection with a public issue or an issue of public interest" because there was "no dispute that Hilton is a person 'in the public eye' and 'a topic of widespread, public interest,' and that she was such well before this controversy." Hilton, 599 F.3d at 907. The court also noted that Hilton's career is "something of concern to a substantial number of people" and is therefore a matter of public interest, even under Weinberg's more restrictive standard. Id.

    Here, despite plaintiff's contention to the contrary, the Court similarly finds that defendants' publications constitute (I) statements "concern[ing] a person or entity in the public eye," (ii) "topic[s] of widespread, public interest," and (iii) "something of concern to a substantial number of people." Hilton, 599 F.3d at 906 (citations omitted). By his own estimation, Shelton is "a country music superstar boasting three gold records, twenty number one country singles, and five Grammy nominations," who is also known for his role on a popular television program. Compl. at ¶ 16. Shelton states in his declaration that although he "do[es] not drink excessively, binge drink, or have a drinking problem," he publicly "joke[s] about drinking" as "part of [his] act," "performance," and "schtick with [his] fans." Dkt. 27-1 (Declaration of Blake Shelton ("Shelton Decl.")), at ¶¶ 8, 12. He further states that his own published statements about drinking are "exaggerated figments of [his] imagination," intended "to amuse and get a reaction from [his] fans."[4] Id. at ¶ 12.

---

    [4]  As an example, Shelton avers that although he once commented on a social media site that he "was so drunk '[he] just defrosted [his] cat . . . In the microwave,' " he "[o]f course . . . did not actually do that," nor did he ever "actually walk into KFC, Taco Bell, Radio Shack or a Ford dealership, pull [his] pants down and yell a joke," despite his comments suggesting as much on a social media website. Shelton Decl. at ¶ 12. Similarly, Shelton avers that although he has stated in the past that he was "shooting a show or performing 'drunk,' " these comments were also made "in jest." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

Accordingly, because Shelton is "in the public eye" and both he and his publicly-stated drinking habits appear to be "topic[s] of widespread public interest," the Court concludes that this action falls within the province of California's anti-SLAPP statute. See Motion at 7-8; Reply at 3-5; see also Hilton, 599 F.3d at 907 (noting that "for the activities of celebrities to be a public issue" under the more restrictive standard articulated in Weinberg, "the activities, as well as the personages involved must be public"). "The connection 'between the challenged statements'—[the headline and statements in the Article]—'and the asserted public interest'—[Shelton's] life, image, [public persona, and drinking habits]—is direct." Hilton, 599 F.3d at 907 (citing Weinberg, 110 Cal. App. 4th at 1132). Indeed, California courts have found the anti-SLAPP statute to apply in contexts where seemingly less well-known celebrities were allegedly defamed by statements touching on their public personas, as cultivated through the media. See e.g., Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798, 807-08 (2002) (finding that referring to a reality television contestant as a pejorative sexual smear triggers anti-SLAPP protection where the television show was "of significant interest to the public and the media" and "generated considerable debate within the media on what its advent signified about the condition of American society"); see also id. at 808 ("By having chosen to participate as a contestant in [a reality] Show [regarding dating], plaintiff voluntarily subjected herself to inevitable scrutiny and potential ridicule by the public and the media."); Nygard, Inc. v. UUSI-Kertulla, 159 Cal. App. 4th. 1027, 1042 (2008) (To constitute an "issue of public interest," the issue "need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest.").

**B.** **Because Plaintiff has made a Prima Facie Showing that his Libel Claim has at least "Minimal Merit," Defendants' Anti-SLAPP Motion Must be Denied as to this Claim**

**1.** **Under California Law, a False and Unprivileged Publication which has a Tendency to Injure One in his Occupation is Libel Per Se**

Under California law, libel is statutorily defined as a "false and unprivileged publication" which either (1) "exposes any person to hatred, contempt, ridicule, or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

*AMENDED CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

obloquy," (2) "causes him to be shunned or avoided," or (3) "*has a tendency to injure him in his occupation*."  Cal. Civ. Code § 45 (emphasis added).  Pursuant to California Civil Code section 45a, "a plaintiff may only prevail on a claim for libel if [1] the publication is libelous on its face or if [2] special damages have been proven."[5]  Newcombe v. Adolf Coors Co., 157 F.3d 686, 694 (9th Cir. 1998).  A statement is libelous on its face if it is defamatory "without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact."  Cal. Civ. Code § 45a.  The initial question "whether a statement is *reasonably susceptible* to a defamatory interpretation is a question of law" for the Court to decide.  Smith v. Maldonado, 72 Cal. App. 4th 637, 647 (1999) (emphasis added).  "Only once the court has determined that a statement is reasonably susceptible to such a defamatory interpretation does it become a question for the trier of fact whether or not it was so understood."  Id.

Of course, as defendants note, the First Amendment imposes an additional heavy burden on public figures, like plaintiff here, who file defamation claims.  A public figure in a defamation case "cannot [ultimately] recover unless he proves by clear and convincing evidence that the defendant published the defamatory statement with actual malice, i.e., with 'knowledge that it was false or with reckless disregard of whether it was false or not.' "  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510 (1991) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)).

For reasons set forth below, the Court finds that plaintiff has demonstrated "the '*minimal merit*' needed to defeat [defendants'] motion to strike."  Hilton, 599 F.3d at 910 (emphasis added).

---

[5]  More specifically, California Civil Code section 45a reads, in full, as follows:

A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face.  Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof.  Special damage is defined in Section 48a of this code.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

**2.    The *In Touch* Cover Headline and Sub-Headlines Alone Support a Claim for Libel Per Se**

In assessing whether a statement is defamatory or protected opinion, the Court "must ask as a threshold matter 'whether a reasonable factfinder could conclude that the contested statement "impl[ies] an assertion of objective fact." '  If the answer is no, the claim is foreclosed by the First Amendment." Partington v. Bugliosi, 56 F.3d 1147, 1153 (9th Cir. 1995); see also Franklin v. Dynamic Details, Inc., 116 Cal.App.4th 375, 385 (2004) ("[T]he dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact.").  The Ninth Circuit has adopted a three-part test for courts to apply in determining, as a matter of law, whether a statement is protected opinion: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false." Partington, 56 F.3d at 1153.

Here, however, defendants do not dispute that the statement, "Blake Shelton has entered rehab," is an assertion of fact susceptible to being proven true or false. See generally Motion.  Rather, defendants argue (1) that any such assertion is not defamatory, as a matter of law, and therefore cannot support a libel claim; and (2) that neither the cover headlines nor the Rehab Story actually assert that Shelton has gone to rehab to treat his drinking.  The Court addresses the merits of these arguments in the discussion that follows.[6]

---

[6]  As an initial matter, the Court rejects defendants' contention that Shelton is "libel proof," as a matter of law, against "all statements (including false statements) that he drinks excessively."  Motion at 14 (citing Wynberg v. Nat'l Enquirer, Inc., 564 F. Supp. 924, 928 (C.D. Cal. 1982) ("[When] an individual engages in conspicuously anti-social or even criminal behavior, which is widely reported to the public, his reputation diminishes proportionately . . . [and] there comes a time when the individual's reputation for specific conduct . . . is sufficiently low in the public's estimation that he can recover only nominal damages for subsequent defamatory statements.")).  First, courts have "cautioned that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

     i.    *Falsely Stating that One has Entered Rehab to Treat Drinking Issues is Libel Per Se under the Standard Articulated by California Law*

    Defendants contend that even assuming *arguendo* that the headline, "REHAB for Blake," could be read as stating that Shelton actually went to rehab, "there is nothing inherently defamatory about electing to seek treatment for drinking." Motion at 10. Specifically, defendants argue that Shelton's claim here—namely, that he was defamed by a false headline indicating that he went to rehab for his drinking—is "analogous" to a line of cases wherein convicted criminals argue they were defamed by false statements indicating that they acted as law enforcement informants.

    In particular, defendants cite one such case applying New York law, wherein the court rejected plaintiff's argument that he had been defamed by a lyric in a rap song stating that he had worked as an undercover federal informant. <u>Agnant v. Shakur</u>, 30 F.

_____

libel-proof plaintiff doctrine is to be sparingly applied, as it is unlikely that many plaintiffs will have such tarnished reputations that their reputations cannot sustain further damage." <u>Stern v. Cosby</u>, 645 F. Supp. 2d 258, 270 (S.D.N.Y. 2009) (Chin, J.) (holding that plaintiff was not libel proof "merely because he was the subject of critical discussion on tabloid television and in celebrity gossip magazines," particularly where he denied the relevant allegations). Second, the allegedly libelous statements here do not simply state that Shelton "drinks excessively." Rather, plaintiff contends that the cover effectively asserts that he entered "REHAB" after "his friends begged him to stop joking about drinking & get help." Such a specific assertion of fact, to the extent a reasonable jury could find it to have been made, is starkly different from statements indicating that Shelton drinks to excess. Thus, even *if* plaintiff is "libel proof" as to false assertions regarding his "excessive drinking," this does not mean defendants may make false assertions regarding his treatment in "REHAB" with impunity. <u>C.f.</u> <u>Liberty Lobby v. Anderson</u>, 746 F.2d 1563, 1568 (D.C. Cir. 1984), (Scalia, J.) ("It is shameful that Benedict Arnold was a traitor; but he was not a shoplifter to boot, and one should not have been able to make that charge while knowing its falsity with impunity."), <u>rev'd on other grounds by</u> 477 U.S. 242 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|----------|----------------------|------|----------------|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

Supp. 2d 420, 424 (S.D.N.Y. 1998) (Mukasey, J.). The court in <u>Agnant</u> held that plaintiff's claim must be rejected because "even accepting that the statements at issue are false[,] . . . [i]n order to be libelous *under New York law*, a false statement must hold the plaintiff up to ridicule or scorn *in the minds of 'right thinking persons*,' " and "those who would think ill of one who legitimately cooperates with law enforcement officials are not such persons." <u>Id.</u> (citation omitted); <u>see also</u> <u>Foster v. Churchill</u>, 87 N.Y.2d 744, 751 (1996) (noting defamation is defined under New York state law as the making of a false statement which tends to " 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society' ").

Applying New York's "right-thinking persons" standard, defendants similarly contend that Shelton's libel claim must fail here, under California law, because "[i]n the minds of right thinking persons, it would be entirely commendable for Shelton to seek rehab considering his undisputed history of bragging about his own drunkenness and his well-publicized behavior while under the influence of alcohol." Motion at 11-12. Plaintiff rejects defendants' reliance upon New York's "right-thinking persons" standard, arguing instead that "[i]t is enough that the communication would tend to prejudice him *in the eyes of a substantial and respectable minority of [persons]*." Restatement (Second) of Torts § 559 (1977); <u>see</u> Opp'n at 11.[7]

Ultimately, defendants' arguments fail for several reasons. First, while the "right-thinking persons" standard appears to be applied frequently under New York law,

---

[7] In addition to relying upon the Restatement of Torts for this assertion, plaintiff also cites to the Supreme Court's decision in <u>Peck v. Tribune Company</u>, wherein the Court explained, in an opinion by Justice Holmes, that "an unprivileged falsehood need not entail universal hatred to constitute a cause of action [for libel]." 214 U.S. 185, 190 (1909). As Justice Holmes further explained, "[n]o falsehood is thought about or even known by all the world," and "[n]o conduct is hated by all. That it will be known by a large number, and will lead an appreciable fraction of that number to regard the plaintiff with contempt, is enough to do [plaintiff] practical harm." <u>Id.</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

the Court is unaware of any authority applying this standard to libel claims under California law.

Second, the Court notes that unlike the question whether it may be defamatory to falsely accuse one of acting as a federal informant—where seemingly "every other court to have considered the question, save one, has held, as a matter of law, that such a statement cannot be defamatory,"[8] Agnant, 30 F. Supp. 2d at 424—no courts appear to have held that defamation claims premised upon false reports of treatment in rehabilitation must fail, as a matter of law. This Court accordingly declines to be the first.

Third, and most importantly, the Court notes that California law provides three distinct, statutorily-prescribed categories of statements that are libelous on their face. See Cal. Civ. Code § 45. Here, the Court does not rely upon the first two such categories—i.e., statements that either (1) "expose[] a[] person to hatred, contempt, ridicule, or obloquy," or (2) "cause[] him to be shunned or avoided." Id. Instead, the Court looks to the third category of statements which constitutes libel per se—i.e., those "false and unprivileged publication[s]" which "ha[ve] a tendency to injure [one] in his occupation." Id. In relying upon this category of libel per se, the Court need not consider whether, as defendants contend, " 'no right thinking person' could disapprove of a person with drinking issues electing rehab." Reply at 10. Nor does the Court consider whether, as plaintiff contends, "a respectable minority [of persons] still view[] the Rehab Story with contempt." Opp'n at 12.

---

[8] See, e.g., Clawson v. St. Louis Post-Dispatch, L.L.C., 906 A.2d 308, 310 (D.C. Cir. 2006) ("[T]he terms 'informer' and 'FBI informer' are not defamatory as a matter of law; nor are they reasonably capable of a defamatory meaning."); Michtavi v. New York Daily News, 587 F.3d 551, 552 (2d Cir. 2009); Connelly v. McKay, 176 Misc. 685, 686, 28 N.Y.S.2d 327, 329-30 (Sup. Ct. N.Y. Cty. 1941) ("At most the language claimed to have been used accuses the plaintiff of giving information of violations of law to the proper authorities. Are such acts reprehensible? Is such language defamatory? This court thinks not.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|----------|----------------------|------|----------------|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

Rather, under California law, it is sufficient that falsely asserting that one entered "REHAB" and that one's "friends begged him to stop joking about drinking & get help" would "ha[ve] a tendency to injure [one] in his occupation." Cal. Civ. Code § 45. As plaintiff argues, the factual predicate to treatment in rehab is an acknowledgment of one's alcoholism, and numerous courts have held that false assertions of one's alcoholism have a tendency to harm one's professional reputation and therefore support a claim for libel per se. See e.g., Welch v. Chicago Tribune Co., 34 Ill. App. 3d 1046, 1049, 340 N.E.2d 539, 541 (1975) (holding that a memorandum stating plaintiff had been terminated "because of *alcoholism*, inefficiency, lack of punctuality, and unreliability . . . *obviously tends to injure plaintiff in his profession* by indicating an unfitness to perform the duties of his employment and therefore could constitute libel per se" under Illinois law) (emphasis added); Smith v. Stewart, 291 Ga. App. 86, 96-97, 660 S.E.2d 822, 831-32 (2008) (holding that a book's portrayal of a fictional character, allegedly based on plaintiff, as a "promiscuous alcoholic . . . with a long history of alcohol abuse, who secretly drinks before and during flights while working as a flight attendant, and who frequently becomes 'smashed' in public," is "injurious on [its] face" and therefore libel per se under Georgia law). Accordingly, a "reasonable reader [here] . . . would perceive [a] defamatory meaning [behind the cover's headlines] without extrinsic aid beyond his or her own intelligence and common sense." Barnes-Hind, Inc. v. Superior Court, 181 Cal. App. 3d 377, 386 (Ct. App. 1986); see also 5 Witkin, Summary of California Law, Torts § 541 (10th ed. 2005) (same).

Thus, even if, as defendants argue, it is "commendable for a person to tackle his or her drinking issues in rehab," Reply at 9 n.11, this presumes that the factual predicate—one's acknowledgment of alcoholism and the underlying need for treatment—is uncontested. Here, Shelton vehemently denies that he is an alcoholic or that he has entered rehab, and in fact contends that the headline's implication to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

contrary "jeopardized both [his] personal and professional reputation."[9]  Shelton Decl. at ¶¶ 3, 5, 12.

    In sum, the Court concludes that, in light of the statutorily-prescribed definition of libel per se under California law, the cover's implication that Shelton has entered "REHAB" after "his friends begged him to stop joking about drinking & get help" is "libelous on its face," as "measured by the effect the publication would have on the mind of the average reader."  Newcombe, 157 F.3d at 695 ("A publication is libelous on its

---

    [9] Defendants' reliance upon Vogel v. Felice, 127 Cal. App. 4th 1006 (2005), wherein the California Court of Appeal reversed a lower court's denial of an anti-SLAPP motion to strike, is also unavailing.  The plaintiff in Vogel had alleged that a published statement indicating that he was "Drunk, & Chewin tobaccy" was "false and highly offensive."  Id. at 1012.  On appeal, the court found that plaintiff had "failed to demonstrate any *substantial* falsity in the characterization 'Drunk and Chewin' tobaccy'" because, although plaintiff "denied being an alcoholic," he did not deny that he chewed tobacco or "that he consumed alcohol to the point of inebriation, . . . had done so often, . . . [and] liked to do so."  Id. at 1022 (emphasis in original).  Defendants here argue that Shelton has, like the plaintiff in Vogel, publicly stated on many occasions that he drinks to excess.  In defendants' view, Shelton's claim must fail because "[c]ourts have consistently rejected attempts to base damage claims on minor factual errors when the gist of the work, taken as a whole, cannot serve as the basis for a defamation claim."  Partington, 56 F.3d at 1161.  This argument fails, however, as Shelton does not merely dispute "minor factual errors" in the headline or the Article, but rather the headline's specific, allegedly false statement that he has entered or is currently in "REHAB."  In this sense, Shelton is not challenging the "gist" of the headline's assertion, but its entirety—he specifically avers in a declaration that he "was not in rehab in September 2015," has "never been to rehab," and has never "considered going to rehab."  Shelton Decl. at ¶ 8; see also Blackstock Decl. at ¶¶ 3, 6; Vause Decl. at ¶¶ 11-13; Canady Decl. at ¶ 10; Strickland Decl. at ¶ 5.  Shelton's refutation is also substantively distinct from that of the Vogel plaintiff, who did not challenge assertions of alcoholism or treatment in rehab, but rather more general characterizations of him as "Drunk, & Chewin' tobaccy" (despite his own admission that he was often "drunk" and did in fact "chew tobaccy").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

face only if there is no need to have explanatory matter introduced."); Cal. Civ. Code § 45 (defining libel as, inter alia, a "false and unprivileged publication" which "has a tendency to injure [one] in his occupation").

> ii.     *A Reasonable Jury Could Find that the* In Touch *Cover Asserts that Shelton has Entered Rehab to Treat his Drinking Issues*

Defendants contend that even if falsely reporting treatment in rehab may support a libel claim, the cover's headline "does not state that Shelton actually went to rehab," but rather "is prescriptive and reflects how those close to Shelton have said he *should* go to rehab to deal with his (undisputed) heavy drinking." Motion at 10 n.7 (emphasis in original). In defendants' view, this "correct reading . . . is underscored" when the headline "REHAB for Blake" is read together with both the sub-headline, "How his friends begged him to stop joking about drinking & get help," as well as the body of the Article itself. Id. Accordingly, defendants argue that Shelton's belief that the cover headline suggests that he "checked himself into rehab," Compl. ¶25, requires an "impermissibly strained reading." Motion at 10 n.7.

Shelton rejects this view, relying in large part upon the Ninth Circuit's decision in Kaelin v. Globe Communications, 162 F.3d 1036 (9th Cir. 1998). The plaintiff in that case, Kato Kaelin, had testified in the high-profile murder trial of O.J. Simpson, which ultimately resulted in Simpson's acquittal. Id. One week after the verdict, defendant Globe Communications published a story in the National Examiner with the headline, "COPS THINK KATO DID IT! . . . he fears they want him for perjury, say pals." Id. at 1037. Kaelin sued, and the lower court granted summary judgment in favor of defendants. For purposes of the appeal, the Court expressly assumed that the text of the article itself was not defamatory. Id. at 1039. Instead, the Court focused on the headline, noting that under California law, "headlines are not irrelevant, extraneous, or liability-free zones," but "essential elements of a publication." Id. at 1040. In assessing the potential interpretations of the headline, the court noted that any allegedly false assertions, whether in headlines or otherwise, are "to be measured . . . by the natural and probable effect upon the mind of the average reader." Id. at 1040 (citation and quotation marks omitted). The court accordingly held that "a reasonable person, at [the] time [of the article's publication], might well have concluded that the 'it' in the first sentence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | | Date | April 18, 2016 |
|----------|----------------------|--|------|----------------|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | | |

the cover and internal headlines referred to the murders.  Such a reading . . . is not negated by or inconsistent with the second sentence as a matter of logic, grammar or otherwise."  Id.

Globe, however, had also argued that "even if the front page headline could be found to be false and defamatory, . . .  the entirety of the publication, including the story itself, clears up any false and defamatory meaning that could be found on the cover."  Id. at 1040-41.  The court rejected this argument, finding that such a determination was "a question of fact for the jury":

> The Kaelin story was located 17 pages away from the cover.  In this respect, the National Examiner's front page headline is unlike a conventional headline that immediately precedes a newspaper story, and nowhere does the cover headline reference the internal page where readers could locate the article.  A reasonable juror could conclude that the Kaelin article was too far removed from the cover headline to have the salutary effect that Globe claims.

Id. at 1041.

Again, in the instant motion, defendants argue that their headline, "REHAB for Blake . . . How his friends begged him to stop joking about drinking & get help," is "prescriptive" and implies only that Shelton's friends *suggested* that he "get help." Motion at 10 n.7.  This argument fails, however, because "[e]ven assuming that such a reading is reasonably possible, it is not the only reading that is reasonably possible as a matter of law.  So long as the publication is reasonably susceptible of a defamatory meaning, *a factual question for the jury exists*."  Kaelin, 162 F.3d at 1040 (noting that Globe had argued that the "it" in the "COPS THINK KATO DID IT!" headline referred to perjury and not the murders).

In light of Kaelin, the Court cannot conclude, as a matter of law, that defendants' "prescriptive" reading of the cover's headline is "the only reading that is reasonably possible as a matter of law."  Id.; see also Solano v. Playgirl, Inc., 292 F.3d 1078, 1083

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

(9th Cir. 2002) (reversing summary judgment for Playgirl on claim by actor that the magazine's cover photograph and headline "created the false impression that readers could expect to find more photographs of him inside the magazine, nude – 'exposed' – in Playgirl's typically sexually explicit and revealing mode of depicting it's 'sexy' male subjects" when the actor had not, in fact, posed nude for the magazine); Eastwood v. Nat'l Enquirer, 123 F.3d 1249, 1256 (9th Cir. 1997) (affirming award for actor Clint Eastwood where cover of magazine falsely "touted an 'Exclusive Interview' " when Eastwood had not, in fact, given any such interview).  A reasonable person viewing the *In Touch* headlines and sub-headlines—which were located 30 pages away from the Article—might well have concluded that Shelton had, in fact, entered "REHAB" after "his friends begged him to stop joking about drinking & get help."[10]

---

[10]  In reaching this conclusion, the Court does not reply upon the testimony of John A. Hawkins, a Professor of Linguistics at the University of California, Davis, whose declaration plaintiff has offered in opposition to the instant motion.  See 27-11 (Declaration of John A. Hawkins ("Hawkins Decl.")).  In his declaration, Hawkins offers his view regarding "what meaning readers would assign to the heading 'REHAB For Blake' and to the accompanying words and phrases on the cover page," as well as "whether readers would understand that the cover page of In Touch Magazine was making a statement of fact."  Hawkins Decl. at ¶ 2.  Defendants object to Hawkins' testimony on the grounds that it is, inter alia, irrelevant and therefore inadmissible.  See Dkt. 29-7 (Evidentiary Objections to Declaration of John A. Hawkins).  For purposes of the instant motion, the Court finds Hawkins's declaration not to be helpful or necessary in discerning "the natural and probable effect upon the mind of the average reader" of the *In Touch* cover's various assertions.  Kaelin, 162 F.3d at 1040 (citation omitted); see also Thomas v. Los Angeles Times Comm., LLC, 189 F. Supp. 2d 1005, 1015 (C.D. Cal.) (Collins, J.) ("The Court finds the declarations submitted by Plaintiff to be unhelpful.  '[T]he publication is to be measured not so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader.'  MacLeod v. Tribune Publishing Co., 52 Cal.2d 536, 547 (1959).  Plaintiff's expert declarants may not be trained in the law, but neither should they be considered 'average readers.' ").  Accordingly, the Court does not cite or otherwise rely upon Hawkins's testimony in ruling on the instant motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

> iii.    *Because it Appears to be Undisputed that Defendants Did Not Believe or Have Reason to Believe that Shelton Had Actually Entered Rehab, Actual Malice is Sufficiently Established for Purposes of Defeating Defendants' Motion to Strike*

"The standard of actual malice is a daunting one," <u>McFarlane v. Esquire Magazine</u>, 74 F.3d 1296, 1308 (D.C. Cir. 1996), and is necessary to guarantee the "national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," <u>Sullivan</u>, 376 U.S. at 270. This standard focuses exclusively on the defendant's subjective state of mind "at the time of publication." <u>Bose Corp. v. Consumer Union</u>, 466 U.S. 485, 512 (1984). With respect to actual malice, plaintiff's complaint alleges that "Bauer did not even give [plaintiff] notice of what it intended to publish, or an opportunity to rebut any of the specific allegations set forth in the Rehab Story in advance of its publication."[11] Compl. at ¶ 30. The complaint further alleges, in general terms, that the Rehab Story "was published with malice or, at a minimum, a reckless disregard for the truth." <u>Id.</u>

As the California Court of Appeal has noted, at least "one court has held similar language—that the defendant acted 'maliciously and oppressively, and in conscious disregard of [plaintiff's] rights'—[to be] insufficient 'to state a cause of action in a case

---

[11]   As defendants rightly note, any alleged failure to provide Shelton with notice or an opportunity to rebut assertions made in the Article is of little relevance in establishing defendants' actual malice or reckless disregard for the truth. Even if Shelton had timely refuted all of the Article's assertions before publication, "the press need not accept 'denials, however vehement; such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error. " <u>Harte-Hanks Comm., Inc. v. Connaughton</u>, 491 U.S. 657, 692 (1989) (quoting <u>Edwards v. Nat'l Audubon Soc., Inc.</u>, 556 F.2d 113, 121 (2d Cir. 1977)). Similarly, because a "reckless disregard" for the truth "requires more than a departure from reasonably prudent conduct," the "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." <u>Harte-Hanks</u>, 491 U.S. at 688 (citation omitted); <u>see also</u> <u>D.A.R.E Am. v. Rolling Stone Magazine</u>, 101 F. Supp. 2d 1270, 1283 (C.D. Cal. 2000) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

where "actual malice" . . . is required.' " <u>Nguyen-Lam v. Cao</u>, 171 Cal. App. 4th 858, 868 (2009) (citing <u>Vogel</u>, 127 Cal. App. 4th at 1018) (internal quotation marks omitted). The Court here, however, like the court in <u>Nguyen-Lam</u>, "need not resolve whether plaintiff adequately alleged actual malice in [his] original complaint because [the] facts probative of actual malice," at least as to whether Shelton *actually* entered rehab, are undisputed. <u>Id.</u> ("[W]e need not resolve whether plaintiff adequately alleged actual malice in her original complaint because facts probative of actual malice emerged through the evidence the parties submitted for the hearing on the strike motion.").

Specifically, it appears to be undisputed that defendants ran the headline and sub-headline, "REHAB for Blake . . . How his friends begged him to stop joking about drinking & get help," without believing that Shelton had actually entered rehab. David Perel, Bauer's Editorial Director for *In Touch* magazine, states in a sworn declaration that he oversaw the reporting and editing of the Rehab story. Dkt. 23-1 (Declaration of David Perel ("Perel Decl.")), at ¶ 2. Specifically, Perel states as follows:

> At the heart of virtually all the challenged Statements from the Article is the central issue of Mr. Shelton's excessive drinking. In particular, he claims that the headline for the Article falsely reports that he actually was in rehab. In the context with the full Article, . . . I do not believe that is a reasonable interpretation. It most certainly was not my intention (nor the intention of any of my editors) to convey in the headline or in the Article that Mr. Shelton had actually entered rehab. And I do not believe that we did convey that he was in rehab.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

Perel Decl. at ¶ 13.[12]  In Perel's view, the headline is "prescriptive," as it simply "paraphrases the advice that concerned friends have given Mr. Shelton, [i.e.,] that he *should* seek professional treatment for his excessive drinking."  Id. at ¶ 7 (emphasis in original).  Adriane Schwartz, the article's lead reporter, also avers that she "believe[s] the Statements in the Article to be true" and "had no reason to doubt at the time the Article was written – let alone seriously doubt – the accuracy of what [her] confidential source told [her] about . . . Shelton's drunken antics during his marriage or about how his friends *told him to go to rehab*."  Dkt. 23-15 (Declaration of Adriane Schwartz ("Schwartz Decl.")), at ¶ 21 (emphasis added).

Accordingly, defendants contend in their motion that Shelton "cannot begin to meet his burden of demonstrating by clear and convincing evidence that Bauer subjectively believed *the Article* to be false or had serious doubts about its accuracy."  Motion at 21 (emphasis added).  According to defendants, "[t]he gist of each challenged Statement [in *the Article*] – that Shelton drank heavily, people around him like his ex-wife believed he needed help, or that his drinking and partying with women contributed to his divorce – had been widely reported before *the Article* and was entirely consistent with the public persona Shelton had cultivated."  Id. at 21-22 (emphasis

---

[12]  Plaintiff objects to many portions of the testimony offered by Perel and Schwartz on the grounds that such testimony offers legal conclusions, lacks foundation, constitutes improper exert testimony, or is hearsay, prejudicial, or argumentative.  See Dkts. 27-38, 27-40 (Objections).  To the extent the Court relies upon such evidence in reaching its conclusion, plaintiff's evidentiary objections are overruled for purposes of this motion.  As a general matter, many of the statements to which plaintiff objects are offered not for the truth of the matters asserted therein, but rather to demonstrate defendants' subjective state of mind and knowledge with respect to their publication of the Article.  See OAO Alfa Bank v. Ctr. for Pub. Integrity, 387 F. Supp. 2d 20, 52 n.53 (D.D.C. 2005) ("The Court notes that no hearsay issues are raised in this case . . . because the . . . statements are being offered not for the truth of the matter asserted, but to demonstrate defendants' state of mind and knowledge (i.e. actual malice) when they published the . . . articles."); Nelson v. Pagan, 377 S.W.3d 824, 831-32 (Ct. App. Tex. 2012) (declaration relating to reliance on sources was admissible "as relevant non-hearsay evidence of [journalist's] state of mind").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

added).  More importantly, defendants contend that their editors "confirmed each and every detail of *the Article* that Shelton now disputes with multiple sources [whom defendants] deemed credible" and "who all provided specific details that corroborated the truth of the Statements."  Id. at 23 (citing Perel Decl. ¶¶9-20;  Schwartz Decl. ¶¶27-35) (emphasis added).

For purposes of striking **\*plaintiff's** claim as to the *In Touch* headline, defendants' arguments are unavailing.  First, the relevant standard on a motion to strike is not "clear and convincing evidence," but a "*reasonable probability* that [plaintiff] *can* produce clear and convincing evidence showing that the statements were made with actual malice." Young v. CBS Broad., Inc., 212 Cal.App.4th 551, 563 (2012) (emphasis added).  Second, the Court notes that defendants here do not assert that they subjectively believed that Shelton actually entered rehab at any time or that they had any sources indicating as much.  Rather, they contend only that it is unreasonable *to interpret* the cover's headline as stating that Shelton had entered rehab, as it "certainly was not [their] intention . . . to convey in the headline . . . that Mr. Shelton had actually entered rehab."  Perel Decl. at ¶ 13.  However, "[t]he editors' statements of their subjective intention are matters of credibility for a jury."  Kaelin, 162 F.3d at 1042 (noting that "[i]t is for a jury to decide whether, as Globe argues, it intended to clarify the sentence 'COPS THINK KATO DID IT!' with the sentence that followed, '. . . he fears they want him for perjury, say pals' "). Thus, while a reasonable jury may ultimately agree with defendants' reading of the headlines and may further find their statements of intent to be credible, it is not the province of the Court to make any such determination here.  See Mindys Cosmetics, 611 F.3d at 599 (noting that on an anti-SLAPP motion to strike, "[t]he court 'does not weigh the credibility or comparative probative strength of competing evidence' ").

In sum, because "it is undisputed that [Bauer] ran the headline ["REHAB for Blake"] knowing that it had no reason to believe that [Shelton] was [in rehab]," this "is not a case where [Bauer] relied in good faith on information that turned out to be false.  It is undisputed that [Bauer] never believed [Shelton] to be [in rehab at or near the time of publication]."  Id.  Thus, to the extent a reasonable jury could accept Shelton's reading of the headlines, "[t]he fact that [Bauer] ran the headlines anyway—'act[ing] with a "high degree of awareness of . . . probable falsity" '—is *circumstantial evidence of actual*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|----------|----------------------|------|----------------|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

*malice*."[13] Id. (emphasis added) (quoting <u>Masson</u>, 501 U.S. at 510); <u>see also</u> <u>Eastwood</u>, 123 F.3d at 1253 ("As we have yet to see a defendant who admits to entertaining serious subjective doubt about the authenticity of an article it published, we must be guided by circumstantial evidence.  By examining the editors' actions, we try to understand their motives.")); <u>but see</u> <u>id.</u> at 1256 ("[T]here is no actual malice where journalists unknowingly mislead the public.") (citing <u>Bose</u>, 466 U.S. at 513 (warning that absent the

---

[13] Defendants also contend in their reply that unlike in <u>Kaelin</u>, "there is no evidence in this case that the Bauer editors harbored any . . . doubts about the accuracy of the cover."  Reply at 23 (citing Perel Decl. at ¶¶13, 36, Schwartz Decl. at ¶ 9).  Specifically, defendants argue that the Ninth Circuit in <u>Kaelin</u> "believe[d] a reasonable juror could find actual malice" based, in part, upon deposition testimony from the editor of the defendant publication establishing that "he saw the headline before it ran and did not think that it 'was very accurate to the story.' " <u>Kaelin</u>, 162 F.3d at 1042.  It is true, of course, that defendants here have not offered any such testimony in their own declarations.  However, the Court notes that the plaintiff in <u>Kaelin</u> was *required* to "come forward with clear and convincing evidence that Globe published the defamatory statements with actual malice" in order "*[t]o defeat a motion for summary judgment.*"  <u>Id.</u> at 1041-42 (emphasis added).  Here, in contrast, for purposes of

> *opposing an anti-SLAPP motion*, a defamation plaintiff need not establish malice by clear and convincing evidence, the standard applicable at trial.  Rather, the plaintiff must meet her *minimal burden* by introducing sufficient facts to establish a prima facie case of actual malice; in other words, to establish a reasonable probability that she can produce clear and convincing evidence showing that the statements were made with actual malice.

<u>Young</u>, 212 Cal. App. 4th at 563 (emphasis added).  For purposes of the instant motion, the Court finds that plaintiff has met his burden as to the publication of the cover headline, "REHAB for Blake."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### *AMENDED CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

subjective test, "any individual using a malapropism might be liable . . . even though he did not realize his folly at the time")).[14]

C.     **The Court also Denies Defendants' Anti-SLAPP Motion as to Plaintiff's False Light Claim**

Defendants devote roughly one page of their motion to arguing that plaintiff's false light invasion of privacy claim is "duplicative" of his libel claim and therefore barred for the same reasons as the libel claim.  Motion at 2 n.3, 24-25.  Specifically, defendants argue that the false light claim must fail because, pursuant to California's Uniform Single Publication Act, "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a . . . magazine[.]"  See Cal. Civ. Code § 3425.3 ("Section 3425.3").  According to defendants, multiple causes of action founded upon the alleged falsity of a single publication or broadcast "must all be dismissed together."  Motion at 25; c.f. Partington, 56 F.3d at 1160 (rejecting false light claim "for the same reason that we rejected . . . defamation claims based on those statements: both statements are protected by the First Amendment regardless of the form of tort alleged").  Defendants' argument misses the mark.

The Ninth Circuit has explained that although "the single publication rule [articulated at Section 3425.3] bars a plaintiff from filing multiple lawsuits and asserting multiple instances of the same tort," the rule "does not limit Plaintiff to one theory of recovery or one distinct cause of action or claim for relief."  Gangland Productions, 730 F.3d at 962-63.  "The purpose of the rule would be undermined if a plaintiff is required, at the time of filing his complaint, one single theory to recover all of his damages, without the benefit of any discovery."  Id.  However, the Court notes that "California courts *have* determined that a false light claim that rests on the false nature of the publication is substantively equivalent to a libel claim based on the same publication."

---

[14]  Because plaintiff has demonstrated the requisite "minimal merit" to defeat defendants' anti-SLAPP motion to strike his claim for libel per se, the Court need not address, for purposes of the instant motion, the merits of defendants' arguments as to the additional statements made in the Article itself.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\*AMENDED CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|----------|----------------------|------|----------------|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

<u>Newcombe</u>, 157 F.3d at 694 (emphasis added).  This is because "California, unlike Nevada, [for example,] requires injury to reputation for  both false light and defamation." <u>Flowers v. Carville</u>, 310 F.3d 1118, 1132-33 (9th Cir. 2002).  Accordingly, where, as here, "a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and *stands or falls on whether it meets the same requirements as the defamation cause of action*." <u>Eisenberg v. Alameda Newspapers, Inc.</u>, 74 Cal. App. 4th 1359, 1385 n.13 (1999) (emphasis added).  Having denied defendants' motion to strike as to plaintiff's libel claim, the Court "need not undertake a separate analysis" for the false light claim, and accordingly denies defendants' motion as to this claim as well. <u>Newcombe</u>, 157 F.3d at 694.

## V.    CONCLUSION

In accordance with the foregoing, defendants' anti-SLAPP special motion to strike is hereby **DENIED**.

IT IS SO ORDERED.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### *AMENDED CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:15-cv-09057-CASAGR | Date | April 18, 2016 |
|---|---|---|---|
| Title | BLAKE TOLLISON SHELTON v. BAUER PUBLISHING COMPANY, L.P. ET AL. | | |

## VI.   APPENDIX

Figure 1



| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |